673 A.2d 713

### DEPARTMENT OF ECONOMIC AND EMPLOYMENT DEVELOPMENT

v.

### Nancy M. PROPPER.

No. 590, Sept. Term, 1995.

Court of Special Appeals of Maryland.

March 27, 1996.

---

598

Andrew Auerbach, Staff Attorney (J. Joseph Curran, Jr., Attorney General, and Lynn M. Weiskittel, Assistant Attorney General, on the brief), Baltimore, for Appellant.

Randolph C. Knepper (Levin & Gann, P.A., on the brief), Baltimore, for Appellee.

Argued before WILNER, C.J., and BLOOM and HOLLANDER, JJ.

HOLLANDER, Judge.

The Board of Appeals ("the Board") of the Department of Economic and Employment Development ("DEED"),[1] appel-

---

1. During the proceedings that gave rise to this appeal, the Board was part of DEED. Effective July 1, 1995, the Board was transferred to the

lant, determined that Nancy M. Propper, appellee, was disqualified from receiving unemployment benefits based on her "gross misconduct" within the meaning of Md.Code (1991, 1995 Supp.), § 8–1002 of the Labor and Employment Article ("L.E."). The Board concluded that Propper was discharged by her employer, Antwerpen Dodge Ltd. ("Antwerpen"), for gross misconduct because she repeatedly worked erratic hours, even though her employer warned her that her conduct was unacceptable. Propper sought review of the Board's decision in the Circuit Court for Baltimore City, which reversed. The Board now appeals, and presents for our consideration two questions, which we have re-worded slightly for clarity:

1. Was the Board's determination that Propper had been discharged for gross misconduct a reasonable application of L.E. § 8–1002(a)(1)(i) (Supp.1995)?

2. Was this determination supported by substantial evidence?

We answer both questions in the affirmative. Accordingly, we shall reverse the circuit court.

### FACTUAL BACKGROUND

Prior to March 1994, Propper and her husband, Scott Propper, were owners and employees of Motor Coach Ltd., located in Randallstown, Maryland. On March 7, 1994, the assets of Motor Coach Ltd. were purchased by Antwerpen. The company retained Ms. Propper as a "transitional employee" in the office.

After Ms. Propper was terminated on May 7, 1994, she filed a claim for unemployment benefits pursuant to Title 8 of the Labor and Employment Article. A DEED claims examiner determined that insufficient information had been presented to support a finding of misconduct. Antwerpen appealed and, on

---

Department of Labor, Licensing, and Regulation ("DLLR"). 1995 Md.Laws, ch. 120, § 5.

July 5, 1994, an evidentiary hearing was conducted before a hearing examiner.

The evidence showed that, immediately after Antwerpen assumed control of the business, it began to experience problems with Propper, because she worked an abbreviated day. Randy Silverman, Antwerpen's office manager, testified that she was responsible for making sure that employees arrived on time and completed their assignments. She stated that Propper was required to work full-time, from 9:00 a.m. to 5:00 p.m., Monday through Friday. According to her testimony, Propper worked from approximately 9:30 a.m. to 3:00 p.m. or 3:30 p.m., although there were occasions when she would come in later than 9:30 a.m. or as early as 8:00 a.m., and would stay as late as 6:00 p.m.

Time records kept by Silverman for the period from April 20, 1994 through May 3, 1994 evidenced a rather erratic schedule on Propper's part. On April 20, she arrived at 10:15 a.m., took one hour for lunch and an additional hour later in the afternoon, and left at 5:00 p.m. On April 21, she did not come to work at all in the morning, arrived at 1:30 p.m., and left for the day at 5:15 p.m. On April 22, she arrived at 9:15 a.m. and left at 3:45 p.m. On April 25, she arrived at 9:00 a.m., took an hour for lunch, and left at 3:00 p.m. On April 26, she arrived at 10:00 a.m., took one hour and forty minutes for lunch, and left at 4:30 p.m. On April 29, she arrived at 9:15 a.m. and left at 3:15 p.m. On May 2, she arrived at 9:15 a.m., took two hours and ten minutes for lunch, and left at 3:50 p.m. On May 3, she arrived at 9:30 a.m., took two hours for lunch, and left at 3:45 p.m. By May 7, she was fired.

Silverman testified that she told Propper her work hours were unacceptable and that Propper was required to work from 9:00 a.m. to 5:00 p.m., Monday through Friday. Propper told Silverman that, although she would try to arrive at 9:00 a.m., she could not stay until 5:00 p.m. because she had to pick up her children on certain days. Sharon Hamby, Antwerpen's comptroller, also spoke with Propper about her hours. Jacob Antwerpen, the owner of the business, discussed appellee's

hours with Scott Propper, appellee's husband, who had been retained as general manager of the business after the purchase by Antwerpen.

The hearing examiner issued a written opinion in which he found, *inter alia,* that Silverman had instructed Propper "that her hours would be 9:00 a.m. to 5:00 p.m. Monday through Friday," but Propper instead worked only around thirty hours per week. The hearing examiner also found that Silverman reminded Propper about what her hours should have been, "but this proved unaffected [sic]." In addition, the examiner found that "[a]fter numerous talks with the claimant regarding her erratic hours, the decision was made to terminate the claimant effective May 7, 1994."

On the basis of his findings, the hearing examiner concluded that Propper had been discharged for "misconduct" within the meaning of L.E. § 8–1003(a) (Supp.1995),[2] and was disqualified from receiving benefits for ten weeks. The hearing examiner concluded, however, that Propper's conduct did not constitute "gross misconduct" within the meaning of L.E. § 8–1002(a) (Supp.1995), because "most of the job duties for Antwerpen were accomplished even though she worked erratic hours."

Propper appealed the hearing examiner's decision to the Board. The Board adopted the hearing examiner's findings of fact but concluded that they warranted a different conclusion of law. It found that "[a]fter counseling and in the face of warning, [Propper] repeatedly violated her work schedule, working up to ten hours per week less than required." It thus concluded that Propper had been discharged for "gross mis-

---

2. L.E. § 8–1003(a) provides:

An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if the Secretary finds that unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is misconduct in connection with employment but that is not:

 (1) aggravated misconduct, under § 8–1002.1 of this subtitle; or

 (2) gross misconduct[,] under § 8–1002 of this subtitle.

conduct" within the meaning of § 8–1002 and was disqualified from receiving benefits.

Propper sought judicial review of the Board's decision in the circuit court, which agreed with Propper and reversed. The court ruled that the Board's decision was "not supported by substantial evidence," and remanded to the Board for a new hearing on the merits. This appeal followed.

Additional facts will be presented in our discussion of the issues.

### SCOPE OF REVIEW

L.E. § 8–512(d) governs the standard of judicial review in connection with administrative adjudications of unemployment insurance benefits. It provides, in pertinent part, as follows:

In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:

(1) findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and

(2) there is no fraud.

*See also Board of Education of Montgomery Co. v. Paynter,* 303 Md. 22, 34–35, 491 A.2d 1186 (1985) (interpreting predecessor statute, Md.Code Ann., art. 95A, § 7(h) (1984)); *Board of Appeals, Department of Employment and Training v. Mayor and City Council of Baltimore,* 72 Md.App. 427, 431–32, 530 A.2d 763 (1987); *Adams v. Cambridge Wire Cloth Co.,* 68 Md.App. 666, 673–74, 515 A.2d 492 (1986).

Under the case law interpreting § 8–512(d) and its predecessor, "findings of fact made by the Board are binding upon the reviewing court, if supported by substantial evidence in the record." *Board of Appeals v. Mayor and City Council of Baltimore,* 72 Md.App. at 431, 530 A.2d 763. *See also Allen v. Core Target City Youth Program,* 275 Md. 69, 74–75, 338 A.2d 237 (1975). Any inference to be drawn from the facts is also left to the agency. It is "the province of the agency to

resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inference." *Baltimore Lutheran High School Association v. Employment Security Administration,* 302 Md. 649, 663, 490 A.2d 701 (1985).

The test is not how this Court would resolve a factual dispute or questions of credibility. On review, we may only determine "if, from the facts and permissible inferences in the record before the [Board], reasoning minds could reach the same result." *Id.* Consequently, we may not reject the Board's decision if it is supported by substantial evidence, unless the decision is wrong as a matter of law. *Adams,* 68 Md.App. at 673, 515 A.2d 492.

Furthermore, decisions of administrative agencies are *prima facie* correct. On appeal, the agency's decision must be viewed in the light most favorable to the agency. *Paynter,* 303 Md. at 35–36, 491 A.2d 1186. *See also Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 511–13, 390 A.2d 1119 (1978). Accordingly, "the reviewing court should not substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken." *Paynter,* 303 Md. at 35, 491 A.2d 1186 (emphasis in original).

### DISCUSSION

### I.

Propper challenges the Board's determination that her conduct constituted "gross misconduct" within the meaning of L.E. § 8–1002(a) (Supp.1995). In the first instance, our inquiry is directed to the disputed findings of fact that the Board adopted. We must determine whether its findings are supported by substantial evidence.

Based on the evidence, the hearing examiner found that Silverman was Antwerpen's office manager.[3] We reject Prop-

---

3. The record reflects the following testimony:

per's contention that Silverman was not Propper's supervisor. According to Silverman, she had the responsibility of making sure employees were at the office on time, keeping a log of when they arrived and left, and making sure they did their jobs while they were at the office.

██ At the hearing, Propper denied that Silverman ever took her to task about her hours, although Silverman testified that she had done so.[4] The hearing examiner found that Silverman had told Propper that she was to work from 9:00 a.m. to 5:00 p.m., Monday through Friday, and that Propper failed to work a full work day. The hearing examiner obviously believed Silverman; credibility determinations are the sole province of the agency. *See Board of Appeals v. Mayor and City Council of Baltimore*, 72 Md.App. at 432, 530 A.2d 763. Therefore, the hearing examiner's determination is conclusive.

██ Propper also challenges the hearing examiner's finding that the work hours evidenced by Silverman's time records for the period April 20 through May 3, 1994 represented a "typical" week of work. Although Propper argues that there was no testimony that the hours from that week were "typical,"

---

[ANTWERPEN'S COUNSEL]: And what is your job at Antwerpen Dodge?
MS. SILVERMAN: Office manager.

4. The following colloquy is relevant:
[ANTWERPEN'S COUNSEL]: In the course of this period of time, did you ever make it known to Ms. Propper that she was supposed to be there 9:00 to 5:00?
MS. SILVERMAN: Yes.
[ANTWERPEN'S COUNSEL]: What did you say to her?
MS. SILVERMAN: I said that we work a schedule of 9:00 to 5:00 Monday through Friday and I needed her to conform to that schedule.

\* \* \* ·:· \* ·:·

[ANTWERPEN'S COUNSEL]: When she didn't work these hours, did you tell her that you found her work schedule unacceptable?
MS. SILVERMAN: Yes.
[ANTWERPEN'S COUNSEL]: What did she say?
MS. SILVERMAN: She said she would do her best to come in at 9:00 and that she couldn't stay until 5:00 because she had to pick up her kids on certain days.

*her own testimony* supported the hearing examiner's conclusion that her hours from the April 20–May 3 time period were typical. Propper testified that she worked from approximately 9:30 a.m. to 3:00 or 3:30 p.m., although there were times when she would vary her arrival or departure times.[5] Propper also testified that, at times, she arrived or left earlier or later. We are of the view, therefore, that a reasoning mind could have found from the evidence that the work schedule shown by the time records was typical for Propper.

 Propper also claims that the hearing examiner's finding that she averaged "around thirty" hours per week lacks a basis in the record. Again, we disagree. Propper's own testimony confirms this finding. She testified that she worked from approximately 9:00 a.m. to 3:00 or 3:30 p.m., which is about thirty hours.

 Finally, Propper challenges the following finding of fact: "After *numerous* talks with the claimant regarding her erratic hours, the decision was made to terminate the claimant effective May 7, 1994." (Emphasis added). She contends that there is no evidence in the record that Antwerpen held "numerous" talks with her about her work schedule.

Based on Silverman's testimony, which we recounted in note 4, the Board was entitled to infer that Silverman had at least

---

5. MS. PROPPER: My testimony is that my hours were what they were when I was a Motor Coach employee.

[ANTWERPEN'S COUNSEL]: What were they?
MS. PROPPER: Approximately 9:00 to 3:00, 3:30. On occasions I came in at 10:00 and [on] occasions I came in 8:00.

 \* \* \* \* \* \*

[APPELLEE'S COUNSEL]: So what type of schedule did you keep while you were employed at Antwerpen Dodge?

 \* \* \* \* \* \*

MS. PROPPER: I came in [at] approximately 9:30. I left approximately 3:40. And there were times that I came in late. There were times that I left at 6:00.

two conversations with Propper.[6] There is no mathematically bright line as to what constitutes "numerous." We conclude that a reasoning mind could reasonably conclude that there had been several conversations between the employer and Propper about her hours.

It is well settled that an agency decision may be affirmed based only on the agency's findings and for the reasons presented by the agency. *United Parcel Service, Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994); *Department of Economic and Employment Development v. Lilley,* 106 Md.App. 744, 755–56, 666 A.2d 921 (1995). But, even if the Board erred in concluding that there were "numerous talks" between Propper and her employer, the mischaracterization as to the number of talks was not the basis of the agency action. Thus, the error, if any, is of no legal significance and is harmless. *See Motor Vehicle Administration v. Mohler,* 318 Md. 219, 234, 567 A.2d 929 (1990) (applying harmless error principle to administrative agency decision); *Bosley v. Quigley,* 189 Md. 493, 508, 56 A.2d 835 (1948) (same); *Department of Public Safety v. Scruggs,* 79 Md.App. 312, 324, 556 A.2d 736 (1989) (same); *Desser v. Department of Health and Mental Hygiene,* 77 Md.App. 1, 14–15, 549 A.2d 18 (1988) (same); *Jacocks v. Montgomery County,* 58 Md.App. 95, 105–07, 472 A.2d 485 (1984) (same).

In our view, the existence of an unsupported or otherwise erroneous finding of fact does not automatically warrant a reversal. *See, e.g., Denton v. Secretary of the Air Force,* 483 F.2d 21, 28 (9th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974); 73A C.J.S. *Public Administrative Law and Procedure* § 225 at 303 (1983). *See also Braniff Airways, Inc. v. Civil Aeronautics Board,* 379 F.2d 453, 465–67 (D.C.Cir.1967) (discussing the harmless error doctrine with respect to erroneous agency factual findings). "Where a subsidiary finding is unsupported or otherwise

---

6. Moreover, Jacob Antwerpen indicated that Sharon Hamby, the comptroller of the business, may have spoken with Propper about her hours.

[APPELLEE'S COUNSEL]: Do you know whether Randy [Silverman] communicated to Ms. Propper what her duties were to be?
MR. ANTWERPEN: I hope so. Randy says that she indicated. It is not only Randy. It's Sharon Hamby.

erroneous but the court is clear that its presence was not material to the ultimate finding, reversal is inappropriate." *Allison v. Department of Transportation,* 908 F.2d 1024, 1029 (D.C.Cir.1990), quoting *Delta Air Lines v. Civil Aeronautics Board,* 564 F.2d 592, 598 (D.C.Cir.1977). *See also Produce Terminal Corp. v. Illinois Commerce Commission ex rel. Peoples Gas Light & Coke Co.,* 414 Ill. 582, 112 N.E.2d 141, 147 (1953) ("It is generally recognized that findings, recitals or reasoning in an order of an administrative tribunal which are not of controlling weight and therefore not essential to the validity of its order may be disregarded on appeal as surplusage."). *Cf. Campbell v. Merit Systems Protection Board,* 27 F.3d 1560, 1570 (Fed.Cir.1994) (where subsidiary facts are unsupported or erroneous, reviewing court must ask whether the agency would have reached the same result absent the impermissible findings); *National Labor Relations Board v. Milgo, Industrial, Inc.,* 567 F.2d 540, 546 (2nd Cir.1977) (reversal warranted only where reviewing court has "substantial doubt" that the agency would have reached the same result absent the erroneous findings of fact); *Denton v. Secretary of the Air Force, supra,* 483 F.2d at 28 (same); *National Labor Relations Board v. Reed & Prince Manufacturing Co.,* 205 F.2d 131, 139 (1st Cir.1953) (same). Rather, a reversal is appropriate only where "there is a reasonable probability that [the] error may have affected the determination of the case." *Jacocks,* 58 Md.App. at 107, 472 A.2d 485. The finding that Antwerpen Dodge had "numerous talks" with Propper about her work schedule was not material to the Board's determination that Propper's actions constituted "gross misconduct."

In sum, whether Propper received one or twenty warnings is not material to the determination of gross misconduct. Since appellant had at least one warning from her employer, any error in finding that Antwerpen had "numerous talks" with appellee was harmless.

## II.

We next consider whether a reasoning mind could have concluded from the evidence that Propper's decision to

work abbreviated hours constituted gross misconduct under L.E. § 8–1002(a) (Supp.1995). L.E. § 8–1002(a) states:

*"Gross misconduct" defined.*—In this section "gross misconduct":

(1) means conduct of an employee that is:

(i) deliberate and willful disregard of standards of behavior that an employing unit rightfully expects and that shows gross indifference to the interests of the employing unit; or

(ii) repeated violations of employment rules that prove a regular and wanton disregard of the employee's obligations; and

(2) does not include:

(i) aggravated misconduct, as defined under § 8–1002.1 of this subtitle; or

(ii) other misconduct, as defined under § 8–1003 of this subtitle.

The hearing examiner found that Silverman advised Propper that her hours were unacceptable and that Propper ignored the warning. In our view, this fact, coupled with the other evidence in the case, supports the Board's finding of gross misconduct.

There are no hard and fast rules for determining what constitutes "deliberate and willful" misconduct. *Department of Economic and Employment Development v. Owens,* 75 Md.App. 472, 477, 541 A.2d 1324 (1988). "The important element to be considered is the nature of the misconduct and how seriously it affects the claimant's employment or the employer's rights." *Department of Economic and Employment Development v. Jones,* 79 Md.App. 531, 536, 558 A.2d 739 (1989). In its determination of whether a claimant has committed gross misconduct, DEED looks not only for "substandard conduct" on the part of the claimant, but also "for a wilful or wanton state of mind accompanying the ... substandard conduct." *Employment Security Board v. LeCates,* 218 Md. 202, 208, 145 A.2d 840 (1958), quoting Sanders,

*Disqualification For Unemployment Insurance,* 8 Vand. L.Rev. 307, 334 (1955). DEED considers "two interrelated questions" in this determination:

"1. Did the employee's conduct show deliberate and willful disregard of the standards of behavior that the employer has a right to expect? and

"2. Did the conduct show gross indifference to the employer's interest?"

*Department of Economic and Employment Development v. Hager,* 96 Md.App. 362, 373–74, 625 A.2d 342 (1993).

Maryland courts have sustained findings of gross misconduct in a variety of fact situations. *See, e.g., Hager, supra* (claimant refused, without meaningful explanation, to accept a transfer to a night shift); *Jones, supra* (claimant was repeatedly absent from work and tested positive for drugs after promising to remain drug-free); *Owens, supra* (claimant was discharged after he threatened to kill his supervisor); *Painter v. Department of Employment Training,* 68 Md.App. 356, 511 A.2d 585 (1986) (claimant, while on sick leave, failed to notify her employer that her physician had released her to return to work); *Employment Security Board v. LeCates,* 218 Md. 202, 145 A.2d 840 (1958) (claimant used a company truck without permission, was involved in an accident, and did not report the accident until being confronted by his employer and the police).

Courts in other jurisdictions have held, under their own unemployment insurance schemes, that habitual or excessive tardiness or early departure, particularly in the face of warnings, may constitute misconduct of the type that disqualifies the discharged employee from receiving benefits. *See, e.g., Wilkerson v. State, Office of Employment Security,* 439 So.2d 506, 509 (La.Ct.App.1983); *Johnson v. Director of Division of Employment Security,* 377 Mass. 229, 385 N.E.2d 975 (1979); *Drysdale v. Department of Human Resources Development,* 77 Cal.App.3d 345, 142 Cal.Rptr. 495 (1978); *Indiana Bell Telephone Co. v. Review Board of Indiana Employment Security Division,* 250 N.E.2d 24 (Ind.Ct.App.1969); *Broadway &*

*Fourth Avenue Realty Co. v. Crabtree*, 365 S.W.2d 313 (Ky. 1963). *See generally* 76 Am.Jur.2d *Unemployment Compensation* § 93 at 864 (1992); 81 C.J.S. *Social Security* § 223 at 441 (1977). *See also Morrison v. U.S. Pipe & Foundry Co.*, 598 So.2d 946 (Ala.Civ.App.1992) (claimant who had been previously warned and suspended for lateness discharged after being thirty minutes late to work due to appointment with her attorney; *held*, misconduct disqualified claimant from benefits). But the parties have not cited, and we have not found, any cases holding that a claimant must receive more than one warning in order to be deemed to have committed gross or willful misconduct.

Here, based on Propper's chronic practice of arriving at work late and leaving work early, in the face of at least one warning that such conduct was unacceptable, the Board did not err in finding gross misconduct. The "[v]iolation of reasonable work rules [has] been held to be willful and intentional misconduct." *Painter*, 68 Md.App. at 358, 511 A.2d 585. In *Watkins v. Employment Security Administration*, 266 Md. 223, 292 A.2d 653 (1972), the Court of Appeals held that persistent absenteeism and tardiness, in spite of a warning from the employer, can constitute gross misconduct.

This view is in accord with L.E. § 8–1002(a) (Supp.1995) and the cases interpreting it. An employer has the right to insist that its employees report to work on time, adhere to a specified schedule, and leave only when that schedule has been completed. An employee's decision to follow a come-and-go-as-I-please philosophy could clearly disrupt the orderly operation of the work place. If an employee deliberately and knowingly ignores his or her employer's requirement that he or she arrive or leave at a certain time, such behavior could evidence a gross indifference to the employer's interests and a defiance of standards that the employer has the right to expect will be followed. This is particularly true if the employee continues this conduct in the face of a warning that such behavior is not acceptable.

JUDGMENT REVERSED.

COSTS TO BE PAID BY DEED.