708 A.2d 47

# DEPARTMENT OF LABOR, LICENSING AND REGULATION

v.

## Tammy L. MUDDIMAN.

No. 1310, Sept. Term, 1997.

Court of Special Appeals of Maryland.

April 7, 1998.

Matthew W. Boyle, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen. and Lynn M. Weiskittel, Asst. Atty. Gen., on the brief), Baltimore, for appellant.

No brief or appearance by appellee's counsel.

Argued before WENNER, DAVIS and BYRNES, JJ.

DAVIS, Judge.

The Department of Labor, Licensing and Regulation (DLLR) appeals from the judgment of the Circuit Court for Harford County reversing the decision of the Board of Appeals (Board) of the DLLR. The Board's decision disqualified appellee Tammy L. Muddiman from receipt of unemployment insurance benefits based on its determination that appellee

was discharged from employment for gross misconduct, as defined by MD.CODE (1991 Repl.Vol. & 1997 Cum.Supp.), Labor & Employment (L.E.) § 8–1002.

Appellee worked for American Studios, Inc. (employer) as a portrait studio manager. After several warnings, she was terminated for repeated violations of the employer's policies. In June 1996, appellee applied for unemployment compensation benefits. A DLLR claims specialist found that she had been discharged for violation of her employer's policy, but found insufficient evidence of misconduct. The employer appealed the findings of the claims specialist. A hearing was held on July 17, 1996; appellee failed to appear. The hearing examiner reversed the finding of the claims specialist, concluding that appellee had been discharged for gross misconduct as defined in L.E. § 8–1002(a)(1)(ii)—"repeated violations of employment rules that prove a regular and wanton disregard of the employee's obligations." Appellee appealed to the Board. Upon review of the record, the Board also concluded that appellee had been discharged for gross misconduct, pursuant to L.E. § 8–1002(a)(1)(ii), and affirmed the decision of the hearing examiner.

Appellee appealed to the Circuit Court for Harford County, which reversed the decision of the Board, based on a finding that appellee had engaged in simple misconduct rather than gross misconduct. In its memorandum opinion, the court concluded that the Board erred as a matter of law in finding gross misconduct because "there ha[d] not been a showing that [appellee's] actions were done with a gross indifference to the interests of the employer as required by the statute"—the standard of gross misconduct as defined in L.E. § 8–1002(a)(1)(i). The Board moved the lower court to alter or amend its judgment in consideration of § 8–1002(a)(1)(*ii*), under which appellee was disqualified. In its motion, the Board noted that the standard relied on by the trial court—"gross indifference to the interests of the employer"—is a requirement only of L.E. § 8–1002(a)(1)(*i*), and the case law

relied on by the lower court addressed only that subsection.[1]
The circuit court denied the motion to alter or amend and
wrote a letter, dated July 10, 1997, to counsel explaining:

I agree with you that the cases cited by me in my Opinion
do in fact address a different section of the Labor and
Employment Article. Specifically, the cases seem to ad-
dress Section 8–1002(a)(1)(i) and not Section 8–1002(a)(1)(ii).
Both of these sections, however, involve gross misconduct
and since there are no reported cases[2] on subsection
(a)(1)(ii), I believe it is appropriate to use these cases to
reason by analogy in interpreting that portion of the Code.

The Board appealed to this Court raising, for our review, the
following question which we restate for clarity:

Did the circuit court err in finding that appellee engaged in
simple misconduct rather than gross misconduct when ap-
pellee was discharged for repeatedly violating the employ-
er's rules despite warnings of possible termination?

We shall answer the question in the affirmative and reverse
the judgment of the circuit court.

## FACTS[3]

From November 1994 to June 8, 1996, appellee was em-
ployed as a portrait studio manager by American Studios, Inc.
The employer discharged her for repeatedly violating its cash
handling policy, as well as for violating its scheduling policy.

---

**1.** The cases cited by the lower court are *Watkins v. Employment Sec.
Admin.*, 266 Md. 223, 292 A.2d 653 (1972); *Employment Sec. Board v.
LeCates*, 218 Md. 202, 145 A.2d 840 (1958); *Department of Econ. &
Empl. Dev. v. Hager*, 96 Md.App. 362, 625 A.2d 342 (1993); and
*Department of Econ. & Empl. Dev. v. Owens*, 75 Md.App. 472, 541 A.2d
1324 (1988). Appellant and the lower court were unable to find any
reported cases addressing the definition of gross misconduct set forth in
L.E. § 8–1002(a)(1)(ii).

**2.** *See Dept. of Labor, Licensing and Regulation v. Hider*, 349 Md. 71, 83,
706 A.2d 1073, 1079 (1998).

**3.** These facts are taken substantially from appellant's brief and record
extract; appellee did not file a brief.

According to the cash handling policy, appellee, as the studio manager, was required to purchase a money order at the end of each day with the day's cash receipts. She was directed to place each day's money order in a cash report envelope. On the outside of each day's envelope, her instructions were to record the amount of cash collected and the type of money order purchased. The envelope and the money orders it contained were to remain in the store until the end of the week, at which time they were to be mailed to corporate headquarters.

On December 15, 1995, appellee was issued a written notice/warning[4] for her failure to purchase money orders with the studio's cash receipts. This warning was prompted by the employer's discovery of cash shortages in appellee's reports to the employer's corporate office. Employer advised appellee that she "must make sure that all money orders are placed in the cash envelope daily and kept in the studio." Additionally, she was warned that another violation of the procedure could result in additional disciplinary action, including termination.

On January 31, 1996, appellee received another written notice/warning. This notice stemmed from, among other performance issues, her failure to follow the employer's policy for altering employee's work schedules, including her own, without seeking the required authorization from the district manager. In this "counseling statement" she was warned that "[f]ailure to comply w[ith] any American Studios policies could result in demotion and [/]or termination."

On June 1, 1996, appellee's district manager visited her store and found that appellee had failed to purchase a money order with the cash received on May 11, 1996, thereby violating the cash handling policy again. Appellee claimed that she had purchased the money order and mailed it separately from the cash report. Notwithstanding this defense, she admitted that she had not purchased the money order until May 13,

---

4. These notices/warnings were termed "counseling statements" by the employer.

1996, a violation of the policy requiring that a money order be purchased at the close of business each day. The employer never received a money order for the cash receipts of May 11, 1996. Appellee could not produce a receipt for the money order. She did not record the amount of the receipts on the envelope as required by her employer's policy. The employer issued another warning to appellee for failure to abide by the cash handling policy and she was again warned that further policy violations could result in termination.

On June 3, 1996, appellee was again responsible for purchasing a money order. When a representative of the employer visited the studio on June 8, 1996, however, the representative discovered that there were cash receipts of $62.68 for June 3, but there was no money order in the cash report envelope and no record that a money order had been purchased that day. In response to questioning, appellee claimed that she had purchased a money order but failed to put it in the envelope as required. Instead, she explained that she took it home. Based on this violation and the previous policy infractions, the employer discharged appellee on June 8, 1996.

## DISCUSSION

### *Standard of Review*

This is an appeal of the lower court's judicial review of an administrative determination. When exercising such judicial review, a circuit court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
(vi) is arbitrary or capricious.

MD.CODE (1995 Repl.Vol.), State Gov't (S.G.), § 10–222(h). "A court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv. Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994).[5]

■ Because this is an appeal from a circuit court's review of an agency's final decision, our role in this appeal " 'is precisely the same as that of the circuit court.' " *Dept. of Human Resources v. Thompson,* 103 Md.App. 175, 188, 652 A.2d 1183 (1995) (quoting *Dept. of Health & Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994)). Accordingly, we have the same recourse given to the circuit court by S.G. § 10–222(h).

■ A reviewing court may not make its own findings of fact, *Board of County Comm'rs v. Holbrook,* 314 Md. 210, 218, 550 A.2d 664 (1988), or supply factual findings that were not made by the agency. *Ocean Hideaway Condo. Ass'n v.*

---

**5.** Labor & Employment § 8–512(d) governs the standard of judicial review in connection with administrative adjudications of unemployment insurance benefits by the Board of Appeals of the Department of Economic and Employment Development. *Department of Econ. and Empl. Development v. Propper,* 108 Md.App. 595, 603, 673 A.2d 713 (1996). It provides, in pertinent part:

In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:
(1) findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and
(2) there is no fraud.

Under the case law interpreting L.E. § 8–512(d) and its predecessor (MD.CODE ANN., art. 95A, § 7(h) (1984)), "findings of fact made by the Board are binding upon the reviewing court, if supported by substantial evidence in the record." *Hider,* 349 Md. at 77, 706 A.2d at 1076; *Propper,* 108 Md.App. at 603, 673 A.2d 713, (quoting *Board of Appeals v. Mayor and City Council of Baltimore,* 72 Md.App. 427, 431, 530 A.2d 763 (1987)).

*Boardwalk Plaza,* 68 Md.App. 650, 662, 515 A.2d 485 (1986). Findings of fact made by the agency are essential in order for the reviewing court meaningfully to review the agency's decision. *See Gray v. Anne Arundel Co.,* 73 Md.App. 301, 307–09, 533 A.2d 1325 (1987). Moreover, it is the agency's function to determine the inferences to be drawn from the facts. On review, neither the circuit court nor this Court may substitute its judgment for that of the agency. *Eberle v. Baltimore County,* 103 Md.App. 160, 166, 652 A.2d 1175 (1995).

▆▆▆ To the extent that issues on appeal turn on the correctness of an agency's findings of fact, such findings must be reviewed under the substantial evidence test. *Thompson,* 103 Md.App. at 190, 652 A.2d 1183 (citing *State Election Bd. v. Billhimer,* 314 Md. 46, 58–59, 548 A.2d 819 (1988)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 190–91, 652 A.2d 1183 (internal quotations omitted). *See also Relay Improvement Ass'n v. Sycamore Realty Co., Inc.,* 105 Md.App. 701, 714, 661 A.2d 182 (1995), *aff'd,* 344 Md. 57, 684 A.2d 1331 (1996) (stating that "substantial evidence means more than a 'scintilla of evidence,' such that a reasonable person could come to more than one conclusion."). In other words, the question on appeal becomes whether a reasoning mind could reasonably have reached the agency's factual conclusion. *Eberle,* 103 Md.App. at 166, 652 A.2d 1175. We may not uphold the agency's decision " 'unless it is sustainable on the agency's findings and for the reasons stated by the agency.' " *United Parcel Serv., Inc.,* 336 Md. at 577, 650 A.2d 226 (quoting *United Steelworkers v. Bethlehem Steel,* 298 Md. 665, 679, 472 A.2d 62 (1984)).

▆▆▆ In contrast to factual challenges, when the question before the agency involves one of statutory interpretation or an issue of law, our review is more expansive. *Liberty Nursing Center, Inc. v. Dept. of Health & Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941 (1993). Under this more expansive review, we may substitute our judgment for that of the agency. *Thompson,* 103 Md.App. at 190, 652 A.2d 1183.

This standard of review is aptly named the "substituted judgment standard." *Id.* Consequently, we are not bound by the agency's statutory or legal conclusions. *Id.*; *Dep't. of Health & Mental Hygiene v. Reeders Memorial Home, Inc.,* 86 Md.App. 447, 452, 586 A.2d 1295 (1991).

 Lastly, "modification or reversal of the agency's decision is only appropriate when the petitioner has demonstrated that substantial rights of the petitioner have been prejudiced by one or more of the causes specified in [S.G.] § 10–222(h)." *Thompson,* 103 Md.App. at 191, 652 A.2d 1183 (citing *Bernstein v. Real Estate Comm'n,* 221 Md. 221, 230, 156 A.2d 657 (1959), *appeal dismissed,* 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960)).

Accordingly, we must examine the record to determine whether the Board applied the correct law and whether there was substantial evidence from which a reasonable mind could arrive at the factual conclusions reached at the administrative level.

 A claimant for unemployment benefits can be disqualified from receipt of those benefits if the claimant was terminated for "gross misconduct." *Hider,* 349 Md. at 81–85, 706 A.2d at 1078–79. The applicable statute is L.E. § 8–1002, which reads in pertinent part:

§ 8–1002. Gross misconduct.

(a) "Gross misconduct" defined.—In this section "gross misconduct":

(1) means conduct of an employee that is:

(i) deliberate and willful disregard of standards of behavior that an employing unit rightfully expects and that shows gross indifference to the interests of the employing unit; *or*

(ii) repeated violations of employment rules that prove a regular and wanton disregard of the employee's obligations; and

(2) does not include:

(i) aggravated misconduct, as defined under § 8–1002.1 of this subtitle; or

(ii) other misconduct, as defined under § 8–1003 of this subtitle.

(b) Grounds for disqualification.—An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is gross misconduct in connection with employment.

■■■ The Board disqualified appellee under L.E. § 8–1002(a)(1)(ii). Examining the record, we find substantial evidence to support the Board's factual findings, and there was no legal error. The employer testified regarding appellee's policy violations and presented four counseling statements that had been issued to her as a result of these violations. Each counseling statement reminded appellee of her obligations, and of the possibility of discharge should she continue to violate the policy. Despite these warnings, appellee continued to violate the relevant policies.

The documentation and testimony offered by the employer provide substantial evidence for the Board's factual findings as to appellee's violations. Additionally, those factual findings support the Board's legal conclusion that appellee was discharged for "repeated violations of employment rules that prove a regular and wanton [6] disregard of the employee's obligations." L.E. § 8–1002(a)(1)(ii).

The circuit court erred in reversing the Board's determination and subsequently finding simple misconduct because it

---

6. Black's Law Dictionary defines "wanton" as "Reckless, heedless, malicious; characterized by extreme recklessness or foolhardiness; recklessly disregardful of the rights or safety of others or of consequences. Means undisciplined, unruly, marked by arrogant recklessness of justice, feelings of others, or the like; willful and malicious. In its ordinarily accepted sense connotes perverseness exhibited by deliberate and uncalled for conduct, recklessness, disregardful of rights and an unjustifiable course of action." (Citations omitted.) BLACK'S LAW DICTIONARY 1582 (6th ed.1991).

misconstrued the applicable statute. The lower court analyzed the case under L.E. § 8–1002(a)(1)(i), while appellee was disqualified under L.E. § 8–1002(a)(1)(ii). These two subsections set forth separate definitions of gross misconduct that require different levels of intent. Additionally, subsection (i) may be implicated by a single violation, while subsection (ii) requires repeated violations. This case involves repeated violations of employment rules.

In support of its reversal, the lower court cited four cases, each of which addresses subsection (i), not subsection (ii). The court concluded that there had been no showing that appellee acted with "gross indifference to the interests of the employer as is required by the statute." As stated *supra*, the trial court confirmed, in its response to the motion to alter or amend, that it referred only to subsection (i) and cases that construe it as opposed to subsection (ii). Nevertheless, the lower court reasoned that, because it found no case law on subsection (ii), it could apply cases dealing with subsection (i) by analogy since both subsections define categories of gross misconduct. The lower court's reasoning is essentially flawed.

 A showing of "gross indifference" is an express requirement only of the first subsection of the statute. It has no bearing on whether there is substantial evidence of gross misconduct under the second subsection, which is based on "repeated" violations. Indeed, the legislature included a different level of intent for repeated violations. Specifically, to violate subsection (ii), the repeated violations must prove a "regular and wanton disregard" to obligations while subsection (i) requires a "deliberate and willful disregard" that shows "gross indifference."

 Furthermore, even if appellee had been terminated, pursuant to subsection (i), we are not persuaded that her actions did not rise to the level of gross misconduct analyzed by the trial court. We note that the trial court did not cite *Department of Economic & Emp. Dev. v. Propper,* 108 Md. App. 595, 673 A.2d 713 (1996), a case that addressed whether an employee was discharged for gross misconduct under sub-

section (i). In *Propper*, this Court held that, if an employee deliberately and knowingly ignores his or her employer's requirement that he or she arrive or leave at a certain time, such behavior could evidence a gross indifference to the employer's interests and a defiance of standards that the employer has a right to expect to be followed. *Id.* at 611, 673 A.2d 713. We held further that this is particularly true if the employee continues this conduct in the face of a warning that such behavior is not acceptable. *Id.*

There are no hard and fast rules for determining what in the particular employment context constitutes "deliberate and willful" misconduct. *Id.* at 609, 673 A.2d 713 (citing *Department of Economic and Employment Development v. Owens,* 75 Md.App. 472, 477, 541 A.2d 1324 (1988)). "In the context of unemployment insurance benefits, '[t]he "wrongness" of the conduct must be judged in the particular employment context.'" *Hider,* 349 Md. at 85, 706 A.2d at 1079–80 (citation omitted). "The important element to be considered is the nature of the misconduct and how seriously it effects the claimant's employment or the employer's rights." *Id.* (quoting *Department of Economic and Employment Development v. Jones,* 79 Md.App. 531, 536, 558 A.2d 739 (1989)).

In this case, there was sufficient evidence that appellee deliberately and willfully decided on more than one occasion not to purchase money orders for the daily cash receipts. In one instance, she claims she took the money order home—a definite violation of the policy. At least one of the money orders is still unaccounted for. Each violation was followed by counseling and a warning that if the improper acts continued, she might be discharged. This pattern of deliberate mishandling of her employer's revenues constitutes a gross indifference to the interests of the employer.

Although we agree with the trial court's reasoning that the difference between simple misconduct and gross misconduct is the severity of the employee's actions,[7] we find substantial

---

7. What the trial court referred to as simple misconduct is addressed in L.E. § 8–1003, which provides, in relevant part:

evidence in the record to support the Board's finding of gross misconduct as a matter of law.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**

§ 8–1003 Misconduct

(a)Grounds for Disqualification.—

An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if the Secretary finds that unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is misconduct in connection with employment but that is not:

(1)aggravated misconduct, under § 8–1002.1 of this subtitle; or

(2)gross misconduct under § 8–1002 of this subtitle.

*See generally Hider, supra.*