711 A.2d 243

**Jennifer HERNANDEZ**

v.

**DEPARTMENT OF LABOR, LICENSING AND REGULATION.**

**No. 751, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

June 11, 1998.

**20**

David C. Shroeder (Richards, McGettigan, Reilly & West, P.C., on the brief), Alexandria, VA, for Appellant.

Matthew W. Boyle, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen. and Lynn M. Weiskittel, Asst. Atty. Gen., on the brief), Baltimore, for Appellee.

Before MURPHY, C.J., and BYRNES, J., and MARVIN H. SMITH, Judge (retired, Specially Assigned).

MARVIN H. SMITH, Judge (retired, Specially Assigned).

In this case we shall hold as a matter of law that appellant Jennifer Hernandez (Hernandez) was not guilty of willful conduct and therefore could not be guilty of gross misconduct under the unemployment compensation law. We shall further hold that she was guilty of negligence and thus of misconduct. Accordingly, we shall reverse the judgment of the Circuit Court for Baltimore City and remand for further proceedings.

Hernandez was a relatively new employee of Loyola Federal Savings & Loan Association. The facts surrounding this incident were succinctly stated by the Board of Appeals of the Department of Labor, Licensing and Regulation (Board or Board of Appeals):

The claimant was employed as a full time customer service representative from November 21, 1994 through June 26, 1995. She is unemployed as the result of a discharge.

The claimant was trained on the various banking procedures and practices that she must follow in order to conduct business. The claimant was aware that in the event that she had questions or did not know how to properly handle certain transactions, a bank branch procedure manual was available for reference. If the manual was unclear, she could ask her supervisors, or telephone the bank's "Methods and Procedures" department for guidance and answers.

According to bank procedure, when closing an account, the employee should "pull" the signature cards, get a proper ID from the person requesting the account to be closed, verify that the person making the request is the owner of the account, and verify that the signature matches the signature card. If the person is an agent for another party, there must be legal documentation to back up that the person closing the account is entitled to receive the funds from the account (i.e. by power of attorney). The employees have a fiduciary responsibility to not only the employer, but to the owner of the account as well.

The claimant was discharged as the result of improperly disbursing $20,000 from an account to a person who was not entitled and did not have the authority to receive such funds. The person who received the funds was a beneficiary to the account, but not the account's owner. The claimant did not check to make 100% sure that the person to whom she was handing $20,000 was the person who was legally entitled to receive such funds. The claimant had manuals and supervisors available for her reference and assistance in ascertaining with certainty that she was dis-

bursing the money in the correct manner to a proper party. The claimant was aware that she had an affirmative primary duty to perform such due diligence but failed to do so.

On those facts the agency concluded as a matter of law:

Section 8–1002 of the Labor and Employment Article defines gross misconduct as conduct of an employee that is a deliberate and willful disregard of standards of behavior that an employing unit rightfully expects and that shows gross indifference to the interests of the employing unit or repeated violations of employment rules that prove a regular and wanton disregard of the employee's obligations.

The Board finds that the claimant had a duty to use due diligence when determining if anyone other than the owner of the account should receive any amount of funds from any account. The claimant did not exercise the reasonable avenues available to her in determining the owner of the account.

Since the amount of funds in question is a significant amount, and since the claimant did not use due diligence before disbursing the funds from the account, she failed in her duties both to the owner of the account and the employer. Protecting the funds of the customer and the good will of the bank was a well-defined primary duty of the claimant. The Board finds that negligence and mismanagement in exercising such an important duty amounts to a wanton disregard of the standard of behavior that the employer has the right to expect rising to the level of gross misconduct.

Accordingly, the agency held that she was discharged for gross misconduct, connected with work, within the meaning of section 8–1002 Labor and Employment Article. It said she was disqualified from receiving benefits from the week beginning June 25, 1995, and until she becomes reemployed, earns at least twenty times her weekly benefit amount ($2,140) and thereafter becomes unemployed through no fault of her own.

Hernandez appealed to the Circuit Court for Baltimore City. It, apparently without opinion, affirmed the decision of

the Board of Appeals.[1]

The scope of judicial review of a determination by the Board of Appeals in an unemployment compensation insurance case is set forth in Maryland Code (1991), section 8–512(d) of the Labor and Employment Article:

*Scope of review.*—In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:

(1) findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and

(2) there is no fraud.

As Judge Rodowsky has just put it for the Court of Appeals in *Department of Labor, Licensing & Regulation v. Hider,* 349 Md. 71, 77–78, 706 A.2d 1073, 1076 (1998):

Under this statute, the reviewing court shall determine only: "(1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." *Baltimore Lutheran High Sch. Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701, 708 (1985). The reviewing court may not reject a decision of the Board supported by substantial evidence unless that decision is wrong as a matter of law. *See Department of Econ. & Employment Dev. v. Propper,* 108

---

1. The record extract contains from the circuit court only the order affirming the decision which gives no reasons for the action taken. The circuit court record transmitted to us contains no transcript of the circuit court proceeding. We cannot help believing that a recording of some type must have been made and that the trial judge in all probability gave some reason from the bench for his decision. If so, it would have been helpful to this Court to have had the benefit of that reasoning and it should have been printed in the record extract. At least one appellate judge with some years of experience has been heard to say that in preparation for oral argument the first thing he reads is the opinion or opinions in the case of the court or courts below, believing, among other things, that he thereby obtains an unbiased overview of the matter. Wise counsel will take due notice thereof and govern themselves accordingly.

Md.App. 595, 604, 673 A.2d 713, 717 (1996). The test for determining whether the Board's findings of fact are supported by substantial evidence is whether reasoning minds could reach the same conclusion from the facts relied upon by the Board. *See Baltimore Lutheran,* 302 Md. at 661–62, 490 A.2d at 708.

Applying the now classic rule enunciated for the Court by Chief Judge Hammond in *Insurance Commissioner v. National Bureau,* 248 Md. 292, 309, 236 A.2d 282, 292 (1967), and repeated by the Court of Appeals many times since, "a reasoning mind reasonably could have reached the factual conclusion the agency reached."

Maryland Code (1991, 1997 Cum.Supp.), section 8–1002 of the Labor and Employment Article, to which the Board alluded, reads, in pertinent part:

(a) *"Gross misconduct" defined.*—In this section "gross misconduct":

(1) means conduct of an employee that is:

(i) *deliberate and willful* disregard of standards of behavior that an employing unit rightfully expects and that shows gross indifference to the interests of the employing unit; or

(ii) *repeated violations* of employment rules that prove a regular and wanton disregard of the employee's obligations; and

(2) does not include:

(i) aggravated misconduct, as defined under § 8–1002.1 of this subtitle; or

(ii) other misconduct, as defined under § 8–1003 of this subtitle.[2]

[Emphasis added.]

Under a predecessor statute before the Court in *Employment Security Board v. LeCates,* 218 Md. 202, 206, 145 A.2d 840, 842–43 (1958), an individual was disqualified for benefits

---

**2.** The last revision of section 8–1002 was in 1992. Thus, this is the provision applicable here.

"[f]or any week in which his unemployment is due to his leaving work voluntarily without good cause, or to his actual or threatened deliberate and wilful misconduct connected with his work, if so found by the Board." Judge Horney posed the rhetorical question for the Court: "When is the misconduct of an employee 'deliberate and wilful'?" He observed that the General Assembly "intended to distinguish between 'deliberate and wilful misconduct' and 'misconduct' of a lesser degree," and "that what is 'deliberate and wilful misconduct' will vary with each particular case." *Id.* at 208, 145 A.2d at 844. The Court then said:

> Here we "are not looking simply for substandard conduct . . . but for a wilful or wanton state of mind accompanying the engaging in substandard conduct. . . . Turning from the requisite state of mind to the type of act or failure to act necessary for "misconduct" we are necessarily thrown into a shifting framework of reference. . . . [T]he "wrongness" of the conduct must be judged in the particular employment context. . . . [C]ertain conduct will be so flagrant that indulging in it will undoubtedly be "misconduct" whether or not a specific rule prohibiting it has been expressly formu-lated and posted or otherwise announced to the employees." Sanders[,] *Disqualification For Unemployment Insurance* [,] 8 Vand. L.Rev. 307, 334 (1955).

*Id.* at 208, 145 A.2d at 844. The Court then went on to observe that "[o]rdinarily a single instance of misconduct would not bring an employee within the disqualifying terms of [the then statute]." *Id.* at 209, 145 A.2d at 844.

In *Department of Economic & Employment Development v. Propper,* 108 Md.App. 595, 610, 673 A.2d 713, 720–21 (1996), this Court said:

> Maryland courts have sustained findings of gross miscon-duct in a variety of fact situations. *See, e.g.,* [*Department of Econ. & Employment Dev. v.*] *Hager,* [96 Md.App. 362, 625 A.2d 342 (1993) ] (claimant refused, without meaningful ex-planation, to accept a transfer to a night shift); [*Depart-ment of Econ. & Employment Dev. v.*] *Jones,* [79 Md.App. 531, 558 A.2d 739 (1989) ] (claimant was repeatedly absent

from work and tested positive for drugs after promising to remain drug-free); [*Department of Econ. & Employment Dev. v.*] *Owens,* [75 Md.App. 472, 541 A.2d 1324 (1988)] (claimant was discharged after he threatened to kill his supervisor); *Painter v. Department of Employment Training,* 68 Md.App. 356, 511 A.2d 585 (1986) (claimant, while on sick leave, failed to notify her employer that her physician had released her to return to work); *Employment Sec. Bd. v. LeCates,* 218 Md. 202, 145 A.2d 840 (1958) (claimant used a company truck without permission, was involved in an accident, and did not report the accident until being confronted by his employer and the police).

The Court then went on to state that "based on Propper's chronic practice of arriving at work late and leaving work early, in the face of at least one warning that such conduct was unacceptable, the Board did not err in finding gross misconduct." *Id.* at 611, 673 A.2d at 721.

In this case, we have an occurrence on but a single day, and the acts were done in immediate succession. The Board of Appeals referred to these acts not as willful, but as a failure to "use due diligence before disbursing the funds from the account. . . ." BLACK'S LAW DICTIONARY 411(5th ed.1979) defines "due diligence" as: "Such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." As to "diligence," the same authority states: "Vigilant activity; attentiveness; or care, of which there are infinite shades, from the slightest momentary thought to the most vigilant anxiety."

The Board of Appeals saw and heard the witnesses in addition to examining that which was brought before the hearing examiner. It did not speak of "willful misconduct," but rather a lack of "due diligence." The failure to use due diligence connotes to us some form of negligence. It was negligence which the agency found. Ordinarily, negligence is something other than a "deliberate and wilful disregard of standards of behavior," which is what the statute requires.

We conclude, therefore, that the Board of Appeals erred as a matter of law in finding that this negligent conduct by this relatively inexperienced person on this single occasion amounted to "willful misconduct."

"Misconduct" is another form of disqualification for unemployment insurance benefits. Code (1991, 1997 Cum.Supp.), section 8–1003 of the Labor and Employment Article, states relative to it:

> (a) *Grounds for disqualification.*—An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if the Secretary finds that unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is misconduct in connection with employment but that is not:
>
> (1) aggravated misconduct, under § 8–1002.1 of this subtitle; or
>
> (2) gross misconduct under § 8–1002 of this subtitle.[3]

Nobody has contended that there was aggravated misconduct before us nor can it be found from the facts here.

*Rogers v. Radio Shack,* 271 Md. 126, 314 A.2d 113 (1974), set forth the definition of misconduct used by the Board of Appeals of the Employment Security Administration under a predecessor of our present section 8–1003:

> The term, "misconduct," as used in the Statute, means a transgression of some established rule or policy of the employer, the commission of a forbidden act, a dereliction of duty, or a course of wrongful conduct committed by an employee, within the scope of his employment relationship, during hours of employment, or on the employer's premises.

*Id.* at 132, 314 A.2d at 117. In *Department of Labor, Licensing & Regulation v. Hider,* 349 Md. 71, 706 A.2d 1073, 1079 (1997), the Court of Appeals concluded that this Court in *Hider v. Department of Labor,* 115 Md.App. 258, 693 A.2d 17 (1997), "erred in construing the misconduct provision of § 8–

---

**3.** The statute as quoted was last amended by Chapter 554 of the Acts of 1992 and thus is that applicable to this case.

1003 to require intentional misbehavior." In *Hider*, the Court of Appeals pointed out that the definition adopted by the Court in *Radio Shack* was a reasonable definition of misconduct.

The *Radio Shack* definition fits the conduct here like a glove. We conclude as a matter of law that what Hernandez did here amounts to misconduct within the meaning of the statute. Hence, this case should be remanded to the Board of Appeals for further proceedings consistent with this opinion.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER REMAND TO THE BOARD OF APPEALS OF THE DEPARTMENT OF LABOR, LICENSING AND REGULATION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY THE APPELLEE.**