**Edward H. ASHER, and, Ciria Sanchez–Baca, Plaintiffs,**

v.

**UNITED AIRLINES, Defendant.**

**No. Civ.A. AW 99–563.**

United States District Court,
D. Maryland,
Southern Division.

Oct. 29, 1999.

Peter E. Derry, and Pyne & Derry, Chevy Chase, MD, for plaintiffs.

Richard W. Galiher, Jr., and Galiher, Clarke & Galiher, Rockville, MD, for defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

### I

Pending before the Court is Defendant's Motion for Summary Judgment. A hearing was held in open court on September 27, 1999. For the reasons that follow, the Court will grant Defendant's Motion.

### II

For the purposes of this motion, where facts are disputed, Plaintiffs version will be accepted. Edward H. Asher ("Asher") was planning a business trip to Italy with his business consultant, David King ("King"). Mr. Asher's wife, Ms. Ciria Sanchez–Baca ("Sanchez–Baca"), decided to join her husband, combining Asher's business trip with their own vacation. Mr. Asher purchased three tickets: he bought two Business Class tickets for King and himself, and one Coach Class ticket for Sanchez–Baca.

Because Sanchez–Baca suffers from advanced rheumatoid arthritis, Asher and Sanchez–Baca agreed that she would sit in one of the two Business Class seats. Plaintiffs told ground personnel of United Airlines that they intended to switch seats; Plaintiffs were told it would not be a problem.[1] Upon boarding the plane, Sanchez–

---

1. Plaintiffs do not allege ground personnel ever informed the flight crew of their discus-sion with them.

Baca sat in the Business Class seat that was in her husband's name and Asher sat in the Coach Class seat. Shortly before take-off, United Airlines upgraded King to First Class.[2] The plane departed Washington Dulles Airport bound for Malpensa Airport in Milan, Italy. Shortly after take-off, Sanchez–Baca invited Asher to join her in the vacant seat next to hers in Business Class. Plaintiffs enjoyed the amenities of Business Class for most of the flight. The difference in price between a Coach Class ticket and a Business Class ticket for this flight was $2000.

Two hours before arrival in Italy a United Airlines steward began comparing the passenger manifest list with the seating chart, and found a discrepancy. Steward Layne Conner ("Conner") awoke Sanchez–Baca and asked her to return to Coach Class.[3] Sanchez–Baca alleges that Conner then "got very loud" and was "very emotional." Conner allegedly screamed: "You know, you don't belong here, you're not supposed to be here. You have—you're stealing from United Airlines. You're using. amenities that you haven't paid for. I'm very ashamed of you.' " [4] Sanchez–Baca began to sob, got her cane, and returned to her designated Coach Class seat.

The stewards then conferred with the captain. The captain decided to report the incident to customer service in Milan, Italy. As Plaintiffs were disembarking at the Milan Airport, they were stopped by Ms. Delphina Moretti ("Moretti"), a customer service representative for United Airlines. Plaintiffs claim Moretti would not them explain the situation, but instead collected their tickets and passports, and told them they could not leave the airport until they paid for the $2000 upgrade. Moretti then discussed the matter with Italian policemen. Plaintiffs contend that the Italian policemen "approached the plaintiffs and placed their hands on their holsters." [5] Moretti allegedly told Plaintiffs they could pay the difference or go to jail.[6] Plaintiffs then gave Moretti their credit card; Moretti returned with the credit card charge about an hour later.

Based on these incidents, Plaintiffs brought a complaint against United Airlines. At present, Plaintiffs common law tort claims include defamation, false arrest and assault, under Maryland law. In their complaint, Plaintiffs alleged that Sanchez–Baca suffered a forty-eight hour flare-up of her chronic arthritis, which she claimed was caused by the alleged incidents. The rest of Sanchez–Baca's damages—and all of Asher's damages—are nonphysical damages.

## III

### A. *Standard of Review For Summary Judgment*

◼ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not properly regarded as "a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,*

---

2. Defendant contends that King was upgraded because of a malfunctioning seat. Plaintiffs dispute this by pointing to certain flight records. In any case, the reason why King was upgraded is irrelevant to this case.

3. The steward contends that Sanchez–Baca was already awake, and otherwise disputes Sanchez–Baca's portrayal of their conversation.

4. One wonders how Asher, who was sitting in the seat next to her, was not immediately awakened by all of this alleged shouting. *See* Dep. of Ciria Sanchez–Baca, at 35.

5. This is the basis for the alleged assault charge.

6. Moretti disputes this, stating she said that a police report would have to be filed.

477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

 While the evidence of the non-movant is believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 164 (4th Cir.1997) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985)). Instead, to defeat such a motion, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A mere "scintilla of evidence" is not sufficient to withstand a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505, 91 L.Ed.2d 202. For the reasons set forth below, the Court will grant Defendant's motion for summary judgment.

## B. *The Warsaw Convention*

 The parties have narrowed the issues involved. Both parties agree that the treaty popularly known as the Warsaw Convention applies to this case.[7] The Warsaw Convention governs claims for personal injuries "on board [an] aircraft or in the course of any of the operations of embarking or disembarking." [8] While Defendant referenced the recent amendments to the Warsaw Convention, neither party argues the amendments control this case.[9]

Plaintiffs have essentially conceded their claims would fail under Article 17 of the Warsaw Convention, which governs personal injury claims. First, Plaintiffs do not argue these incidents were "accidents," which is required to recover damages under the Warsaw Convention. *See Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985) (holding air carrier's liability under Warsaw Convention is limited to "accidents" as they are broadly defined).

Second, Plaintiffs have admitted Asher's damages are nonphysical, and conceded they have no medical evidence to prove Sanchez–Baca's alleged physical injury or its cause. Even if Plaintiffs had contended they could prove Sanchez–Baca's elusive physical injury—a temporary aggravation in her joints of an already chronic case of rheumatoid arthritis—no reasonable jury could find for them on the evidence produced. In an exhaustive analysis of the Convention, the Supreme Court in *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991) rejected broader interpretations of Article 17 that would have allowed recovery for a variety of psychic injuries, and held that an air carrier cannot be liable if it did not cause a passenger to suffer "death, physical injury, or physical manifestation of injury." Given Plaintiffs can prove no physical injury or physical manifestation of injury, they cannot recover under Article 17 of the Convention.

The Supreme Court's recent decision in *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) then is decisive on this issue. In

---

7. *Convention for the Unification of Certain Rules Relating to International Transportation by Air,* Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S. § 40105.

8. Art. 17, 49 Stat. 3018.

9. *Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air,* signed at Warsaw on October 12, 1929, as amended by the Protocol Done at the Hague on September 8, 1955 ("Montreal Protocol No. 4"), reprinted in S.Exec.Rep. No. 105–20, pp. 21–32 (1998). Even if Montreal Protocol No. 4 applied, this would not change the outcome of the case. *See El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 119 S.Ct. 662, 674, 142 L.Ed.2d 576 (1999) (holding Montreal Protocol No. 4 "merely clarifies, it does not alter, the Convention's rule of exclusivity").

**618**

*Tseng*, the plaintiff was taken aside and subjected to an intrusive security search at John F. Kennedy International Airport in New York before being allowed to board an international flight. *See Tseng*, 119 S.Ct. at 666. The plaintiff brought state tort claims under New York law, alleging damages similar to those by Plaintiffs in this case.[10] The Second Circuit, reversing a dismissal by the District Court, held that a plaintiff who did not qualify for relief under the Convention could seek relief under local law. *See Tseng v. El Al Israel Airlines, Ltd.*, 122 F.3d 99 (2nd Cir.1997).[11] The Supreme Court granted certiorari and reversed the Second Circuit. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999).

In deciding the question of the Convention's exclusivity, the Supreme Court found that the "cardinal purpose of the Warsaw Convention ... is to achiev[e] uniformity of rules governing claims arising from international air transportation." *See El Al Israel Airlines, Ltd., v. Tsui Yuan Tseng*, 525 U.S. 155, 119 S.Ct. 662, 671–72, 142 L.Ed.2d 576 (1999). The Court found that the Convention preempted claims based on local law, holding that if recovery is "not allowed under the Convention, [it] is not available at all." *See Tseng*, 119 S.Ct. at 676. The Court noted that to allow parties to pursue claims under local law when the Convention bars recovery would "encourage artful pleading by plaintiffs seeking to opt out of the Convention's liability scheme when local law promised recovery in excess of that prescribed by the treaty." *Id.* at 672.

■ Based on *Floyd* and *Tseng*, it is clear that Plaintiffs claims could not recover under the main provisions under of the Convention. Plaintiffs now pin their case on their interpretation of Article 25(1) of the Warsaw Convention. Article 25(1) states:

> The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his willful misconduct or by such default on his part as, in accordance with the law of the Court to which the case is submitted, is considered to be equivalent to willful misconduct.

*See* The Warsaw Convention, Article 25(1).

Plaintiffs now allege that United Airlines engaged in "willful misconduct" through the acts of its employees. According to Plaintiffs' interpretation of the Warsaw Convention, when a carrier engages in "willful misconduct," Article 25(1) provides an independent basis for recovery. Thus, according to Plaintiffs, they can prevail under Article 25(1) even "absent ... physical injury" if they show United Airlines engaged in willful misconduct. Defendant denies Plaintiffs' new-found allegations of willful misconduct as a matter of law. Defendant also argues that Article 25(1) only excludes the monetary liability caps in Article 22.

### C. *Willful Misconduct*

The Court must first consider the question of willful misconduct. Article 25(1) instructs that willful misconduct is to be decided "in accordance with the law of the Court to which the case is submitted." Plaintiffs did not argue what law should apply; Defendant offered definitions from other Circuits. The Fourth Circuit has not defined "willful misconduct" under the Warsaw Convention in a published opinion. Most courts, however, have determined that local law should apply. *See, e.g., Insurance Company of North America v. Federal Express Corporation*, 189 F.3d

---

10. *See Tseng v. El Al Israel Airlines, Ltd.*, 919 F.Supp. 155, 156 (S.D.N.Y.1996) (noting plaintiff's claims that she was subjected to "assault, false imprisonment, physical and mental abuse and humiliation, and the loss of and damage to her property.")

11. Prior to *Tseng*, the Fourth Circuit reserved deciding the exclusivity of the Convention. *See Sakaria v. Trans World Airlines*, 8 F.3d 164, 173 (4th Cir.1993).

914, 1999 WL 669178 (9th Cir.1999) (applying California state law on willful misconduct over federal common law). Under applicable local law, Plaintiffs' allegation of "willful misconduct" falls far short.[12]

Courts have described "willful misconduct" as acts which are "performed with the actor's actual knowledge or with what the law deems the equivalent to actual knowledge of the peril to be apprehended, coupled with a conscious failure to avert injury." *Wells v. Polland,* 120 Md.App. 699, 719, 708 A.2d 34, 44 (1998) *citing Doehring v. Wagner,* 80 Md.App. at 246, 562 A.2d 762 (1989). Courts have also noted "that what is 'deliberate and wilful misconduct' will vary with each particular case." *Hernandez v. Department of Labor,* 122 Md.App. 19, 711 A.2d 243 (1998) *quoting Employment Security Board v. LeCates,* 218 Md. 202, 206, 145 A.2d 840, 842–43 (1958). Even accepting as true Plaintiffs' account, and noting that being called a thief, being intimidated and being temporarily detained could, under certain circumstances, demonstrate evidence of "willful misconduct," this is clearly not one of those cases.

First, "willful misconduct" presupposes that these United Airlines' employees were engaged in some form of misconduct. It is undisputed that Sanchez–Baca was not in the seat shown on her ticket or on the manifest list, that she enjoyed the amenities of Business Class, and that the difference in ticket prices was $2000. Plaintiffs craft a curious argument to justify their actions. They argue that because they paid for two Business Class tickets, and because United Airlines asked King to vacate the seat he was assigned, that Plaintiffs had a right for one of them to move up to Business Class. No reasonable jury would accept this argument. Therefore, at a minimum, Defendant's employees had probable cause to investigate and seek compensation from Plaintiffs.

In addition, no evidence has been produced by which a jury could find that the United Airlines employees had "actual knowledge or with what law deems equivalent to actual knowledge of peril to be apprehended, coupled with conscious failure to avert injury." *See Wells v. Polland,* 120 Md.App. 699, 708 A.2d 34 (1998). Thus even if Defendant's employees could have handled the situation differently, their actions do not rise to the level of gross negligence or willful misconduct in this case. *Cf. Tseng v. El Al Israel Airlines, Ltd.,* 919 F.Supp. 155, 156 (S.D.N.Y. 1996).

### D. Article 17 and Article 25

Plaintiff also claims that Article 25(1), if triggered, operates to exclude all of the other provisions of the Convention. According to Plaintiffs, if they can show "willful misconduct" they could then sue on state law claims outside the Convention. In their support, Plaintiffs cite the word "exclude" in Article 25 and point to language in Justice Stevens' dissent in *El Al Airlines, Ltd. v. Tseng,* 525 U.S. 155, 119 S.Ct. 662, 675–77, 142 L.Ed.2d 576 (J., Stevens, dissenting).

 The Court disagrees with this interpretation. At the outset, the Court notes the obvious: Justice Stevens was in dissent and thus his opinion is not binding. While there is no published Fourth Circuit decision on point, the overwhelming weight of judicial authority holds that Article 25(1) merely lifts the monetary limitation

**12.** Maryland choice-of-law generally applies the principle of *lex loci*. Unfortunately, this is difficult to determine, because a substantial portion of the events originated somewhere over the Atlantic Ocean and Europe. As to the possibility of Italian law, based on the Italian legal sources this Court has consulted, there is very little interpretation of "willful misconduct" in this context. The Courts' concerns are assuaged, however, because the indications are that Italian law would not differ meaningfully from Maryland law. Given neither party presented a position on this issue, and given Plaintiffs are citizens of Maryland, filed their claims in Maryland, and base their claims on Maryland state law, this Court will rely on Maryland caselaw.

**620**

liabilities of Article 22 of the Convention; it does not create an independent grounds by which to pursue state tort claims that would not survive under the Convention. *See Onyeanusi v. Pan Am*, 952 F.2d 788, (3rd Cir.1992) ("Article 25(1) would only excuse the [Warsaw] Convention's limitations on monetary liability, not the requirements of notice."); *Stone v. Mexicana Airlines, Inc.*, 610 F.2d 699, 700 (10th Cir.1979) (holding willful misconduct did not exclude Warsaw Convention's statute of limitations period); *Floyd v. Eastern Airlines*, 872 F.2d 1462, 1483–85 (11th Cir. 1989) (holding willful misconduct only removes liability cap in Article 22 and does not make Warsaw Convention inapplicable as a whole) *rev'd on other grounds*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); *In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1475, 1488–89 (D.C.Cir.1991) (holding Article 17 is not interpreted as one of the provisions that "exclude or limit" liability for which Article 25 applies).

In addition, to accept Plaintiff's position would encourage a similar kind of "artful pleading" which Justice Ginsburg warned of if parties could pursue local law claims when the Convention does not permit recovery. *See Tseng*, 119 S.Ct. at 672–73 ("The Court of Appeals' construction of the Convention would encourage artful pleading by plaintiffs seeking to opt out of the Convention's liability scheme when local law promised recovery in excess of that prescribed by the treaty.").[13] Thus, if the Court accepted Plaintiffs' position, every claim which would fail under the Convention would now be pled as acts of "willful misconduct." This would run contrary to the Supreme Court's finding that the Convention's purpose "is to achiev[e] uniformity of rules governing claims arising from international air transportation." *See El Al Israel Airlines, Ltd., v. Tsui Yuan*

*Tseng*, 525 U.S. 155, 119 S.Ct. 662, 671–72, 142 L.Ed.2d 576 (1999).

The Court believes that in accord with the weight of judicial authority among the Courts of Appeals, and in light of *Tseng*, the correct interpretation is that Article 25(1) only lifts the monetary limitations found in Article 22 of the Convention. Therefore, even if Plaintiffs somehow had produced evidence sufficient to show "willful misconduct" in this case, their claims would still not be recoverable on the facts of this case.[14]

**IV**

For the reasons set forth, the Defendant's motion for summary judgment is granted as to all counts. A separate order consistent with this opinion will follow.

---

**13.** While Plaintiff is correct that the *Tseng* Court specifically did not rule on Article 25, *see Tseng*, 119 S.Ct. at 670 n. 10, the Court's concerns about uniformity are compelling in this context as well.

**14.** Even if Plaintiffs' state law claims were somehow recoverable, the Court has grave reservations that any of them could survive summary judgment.