511 A.2d 585

**Phyllis PAINTER**

v.

**DEPARTMENT OF EMPLOYMENT AND TRAINING, et al.**

**No. 1544, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

July 11, 1986.

Luther Blackiston, Towson, for appellant.

Amy S. Scherr, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., and Karen Stakem Hornig, Sp. Asst. Atty. Gen. on brief), Baltimore, for appellees.

Argued before MOYLAN and ADKINS, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge.

The Board of Appeals of the Department of Employment determined that Phyllis Painter, appellant herein, was terminated from her job as a cashier at a Food-A-Rama market for gross misconduct within the meaning of Maryland Annotated Code, Art. 95A, sec. 6(b). As a result, appellant was not eligible for unemployment benefits. The agency decision was affirmed by the Circuit Court for Baltimore County and appellant has appealed from that decision.

Two issues are presented for our determination, namely:

1. Was the decision by the Board of Appeals, under sec. 6(b), that appellant was discharged for gross misconduct, based upon material, competent and substantial evidence?

2. Was the decision by the Board of Appeals, under sec. 4(c), that appelland was not available for full time work, based upon material, competent and substantial evidence?

Appellant's employment had continued for a period of three years until she was injured in a car accident on May 31, 1983. Having sustained shoulder and neck injuries in the accident, appellant went on medical leave due to her

inability to work. On August 29, 1983, appellant was released by her physician in order that she could return to work. Appellant did not notify her employer of the release until nearly three months later, the exact date of her notification being November 10, 1983.

Appellant's employer subsequently learned of the earlier release and, according to appellant, she advised her employer that she did not present the earlier release because she had become nauseous during the latter part of August and this new illness continued and she did not believe that she was able to return to her job as a cashier. Her belief that she was pregnant, causing the nausea, was confirmed by a different physician on October 31, 1983. The second physician released appellant to return to work in November on condition that she not attempt to lift more than fifty pounds and that she not travel long distances from her home to her place of employment.

Food-A-Rama terminated appellant for her failure to inform the company of her medical release on August 29th. She was denied unemployment benefits based upon gross misconduct pursuant to Article 95A, sec. 6(b), which provides:

> For the purposes of this Article, the term 'gross misconduct' shall include conduct of an employee which is (1) a deliberate and willful disregard of standards of behavior, which his employer has a right to expect, showing a gross indifference to the employer's interest, or (2) a series of repeated violations of employment rules proving that the employee has regularly and wantonly disregarded his obligations. Misconduct not falling within this definition shall not be considered gross misconduct.

There is no hard and fast rule to determine what constitutes "deliberate and willful" misconduct. *Employment Security Board v. LeCates*, 218 Md. 202, 145 A.2d 840 (1959). Violation of reasonable work rules have been held to be willful and intentional misconduct. Specifically, in

*Blessings v. Commonwealth,* 34 Pa.Cmwlth. 345, 383 A.2d 580 (1978), the court said:

> "An employer has the right to expect an employee on sick leave to return to work when cleared to do so by his physician or at least to notify the employer of his reasons for failing to do so ... a deliberate attempt by an employee to mislead his employer would clearly constitute willful misconduct."

*See also Oullette v. Employment Division,* 34 Or.App. 591, 579 P.2d 301 (1978) (employee with work release to return to work remained off the job).

■ Under the present Maryland statute a disregard of the standards of behavior an employer has the right to expect from employees constitutes gross misconduct if such conduct is both willful and deliberate. Clearly, it is in the employer's interest to be kept informed of the health and well being of employees in order that the business may be conducted as efficiently as possible.

Not unexpectedly, the evidence in this case is conflicting. Appellant argues that under the collective bargaining agreement between the union and the employer, the employee is entitled to a maximum of six months sick leave which could be extended for an additional six months upon the submission of medical evidence that the employee remained unable to work. Food-A-Rama's own witness, appellant says, testified that the union paid the sick benefits and, therefore, the employer did not contact employees who were on sick leave regarding the nature or probable duration of any illness. Appellant concludes that this testimony dispels any finding that appellant's failure to notify Food-A-Rama of her release amounts to gross misconduct. Appellant testified, however, that she notified her employer personally and by letter of her intention to remain on sick leave due to suspected pregnancy. This testimony was categorically denied by three employees who testified for the employer.

From this evidence the referee could have concluded that appellant failed to notify either the union or her employer of her release to return to work on August 29, 1983, and, further, that this decision was both willful and deliberate and calculated to withhold from her employer the knowledge that she was able to return to work. An employer is entitled to such information irrespective of payment of benefits, in order to maintain a work force, train new employees, re-assign jobs and for a host of other reasons depending on the nature of the employment and the volume of business. Additionally, we think appellant misconstrues the testimony regarding sick leave. A six month sick leave policy does not mean that an employer has no vested interest in an employee's welfare until six months has expired from the onset of an illness. Obviously, if the duration of the disability is less than the maximum period allowed, the employer is entitled to be kept informed of the employee's condition. That is the purpose of the notices that are periodically sent to the employer by the attending physician.

■ In any event, we are mindful of the standard of review of the administrative adjudication of unemployment insurance appeals set forth in Article 95A, sec. 7(h).

> In any judicial proceeding under this section, the findings of the Board of Appeals as to the facts, if supported by competent, material and substantial evidence in view of the entire record, and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.

Where, as here, the agency's conclusions can be reached by reasoning minds, the decision is based upon substantial evidence, and we may not reject that result. *Baltimore Lutheran High School Assn., Inc., v. Employment Security Administration,* 302 Md. 649, 490 A.2d 701 (1985). The referee did not indicate whether he was relying on the first or second category of sec. 6(b) in arriving at his decision. He found that appellant sent periodic notices of her condi-

tion to her employer withholding only the critical one in August authorizing her to return to work. This conduct, he concluded, amounted to gross misconduct. We agree.

■ Although the affirmance of the decision reached by the agency and affirmed by the Court renders the second issue, (availability for work under 4 c), moot, we shall address it briefly. The appeals referee found that appellant was not medically able to work in her normal occupational classification due to her nausea and inability to lift more than fifty pounds, thus precluding her from full time employment required by section 4(c). Appellant testified that she was able and willing to return to her job on a full time basis. The agency also found that nausea did not prevent her from actively seeking work at a number of places. The testimony was that a cashier-clerk *may* be required to lift as much as fifty pounds. A physician's opinion that the employee should not lift *more* than fifty pounds is not, in our view, imposing a restriction on employment. Whether the occasion would ever arise is purely speculative. We disagree that the 4(c) finding was based upon substantial evidence.

JUDGMENT AFFIRMED. COSTS OF PREPARATION AND FILING OF TRANSCRIPT OF TESTIMONY, PRINTED RECORD EXTRACT AND APPELLANTS BRIEF TO BE PAID BY APPELLANT. ALL OTHER COSTS AND FEES TO BE PAID BY APPELLEE.