541 A.2d 1324

**DEPARTMENT OF ECONOMIC AND EMPLOYMENT DEVELOPMENT, et al.**

v.

**James Arthur OWENS.**

**No. 1402, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

June 8, 1988.

Lynn Weiskittel, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Alexander Wright, Jr., Asst. Atty. Gen., Baltimore, on the brief), for appellant, Board of Appeals.

Elizabeth M. Hewlett (Wayne K. Curry, Steven R. Smith and Meyers, Billingsley, Shipley, Curry, Rodbell & Rosenbaum, P.A., Riverdale, on the brief), for appellant, Prince George's Hosp. Center.

Timothy J. Paulus, Riverdale, for appellee.

Argued before MOYLAN, BLOOM and WENNER, JJ.

MOYLAN, Judge.

The Board of Appeals of the Department of Economic and Employment Development[1] (hereinafter the "Board") determined that the appellee, James Arthur Owens, was ineligible for unemployment insurance benefits because of "gross misconduct," within the meaning of Md.Ann.Code (1957, 1985 Repl. Vol., 1987 Cum.Supp.), Art. 95A, § 6(b),[2] that resulted in his termination from his job at Prince George's Hospital Center. The Circuit Court for Prince George's County reversed the agency's decision, thus prompting the instant appeal by the appellants, the Department of Economic and Employment Development and Prince George's Hospital Center.

The appellee was employed by the Prince George's Hospital Center as a general mechanic from April 2, 1975, through October 31, 1986, when he was terminated for threatening to kill his supervisor. Prior to his termination, the appellee had been perturbed by problems with his supervisor, Ernest Barton. The appellee felt "picked on" by Mr. Barton and had filed grievances to that effect. So too was appellee disgruntled with the Union he belonged to, Local 63, for the manner in which it handled his grievances.

---

1. The Department of Economic and Employment Development was created by the Legislature per Acts of 1987, ch. 311, codified at Md.Ann.Code (1957, 1986 Repl.Vol., 1987 Cum.Supp.), Art. 41A, § 1–101 *et. seq.* The Board of Appeals is an entity within the Department.

2. Unless otherwise indicated, all statutory references are to Md.Ann. Code (1957, 1985 Repl.Vol., 1987 Cum.Supp.) Art. 95A.

On the date he was ultimately discharged, October 31, 1986, the appellee had become agitated during a grievance meeting with his supervisors. As the appellee and Director Paul Quick emerged from Mr. Quick's office, the two were engaged in a spirited discussion about the grievance meeting. Following the conclusion of the conversation, the appellee walked directly to the office of Ernest Barton and peered in. Mr. Barton was not in his office.[3] The office was located 15 feet from the spot where two of appellee's co-workers, Louis Proctor and Wesley Wise, were seated. The appellee retreated from Mr. Barton's office and walked back towards Mr. Proctor and Mr. Wise, pointed at them and said, "Mark my words, I'm going to kill that motherfucker [Mr. Barton] by the end of the day."

Mr. Proctor and Mr. Wise alerted hospital security, and security personnel immediately escorted Mr. Barton off the hospital premises for his protection. Security personnel then located appellee and escorted him from the building. The appellee was terminated immediately because of the seriousness of the incident.

On November 18, 1986, a claims examiner of the Department of Economic and Employment Development determined that appellee was disqualified from receiving unemployment insurance benefits under § 6(b) because appellee was fired for threatening to kill his supervisor. Appellee appealed that decision to no avail. A hearing examiner, after a full evidentiary hearing on the record, upheld the disqualification. Undaunted, the appellee appealed to the Board on February 9, 1987. The Board denied review. It concluded that the decision of the hearing examiner conformed with the Maryland Unemployment Insurance Law.[4]

---

3. Mr. Barton was attending a meeting elsewhere and did not hear the threat made by the appellee.

4. When the Board denies review, the determination of the hearing examiner is deemed the decision of the Board for purposes of judicial review under Art. 95A, § 7(f).

The appellee then sought judicial review in the Circuit Court for Prince George's County. Following a hearing on September 25, 1987, the circuit court reversed and remanded the decision of the Board. The court concluded that the evidence was insufficient to establish "gross misconduct" as defined in § 6(b). Thereupon, the Department of Economic and Employment Development and Prince George's Hospital Center filed the instant appeal. We are asked to decide:

1. Whether there is substantial evidence in the record to support the Board's decision that the appellee was not eligible for benefits because he was terminated from employment for gross misconduct after he threatened to kill his supervisor; and

2. Whether the appellee's threat to kill his supervisor constitutes gross misconduct within the meaning of § 6(b).

As the resolution of the first issue necessarily hinges upon our analysis of the second issue, they will be discussed in inverse order.

## I.

Article 95A, § 6(b), in pertinent part, provides:

"An individual shall be disqualified for benefits:

(b) *Gross misconduct.*—For any week in which his unemployment is due to his having been discharged or suspended as a disciplinary measure for gross misconduct connected with his work, if so found by the Executive Director.... For the purposes of this article, the term 'gross misconduct' shall include conduct of an employee which is (1) a deliberate and willful disregard of standards of behavior, which his employer has a right to expect, showing a gross indifference to the employer's interest, or (2) a series of repeated violations of employment rules proving that the employee has regularly and wantonly disregarded his obligations. Misconduct not falling within this definition shall not be considered gross misconduct."

■ It is clear that under § 6(b)(1) a disregard of the standards of behavior an employer has the right to expect from employees constitutes gross misconduct if such conduct is both willful and deliberate. It was stated in *Employment Security Board v. Le Cates*, 218 Md. 202, 145 A.2d 840 (1958), that there is no hard and fast rule to determine what constitutes "deliberate and willful" misconduct. *See also Painter v. Department of Employment and Training, et al.*, 68 Md.App. 356, 511 A.2d 585 (1986). Certainly, threats of bodily harm to one's superior is behavior that qualifies as willful misconduct. Such behavior evidences a disregard of the standards of behavior that an employer has a right to expect of an employee as well as being disruptive of the orderly operation of the workplace. Although no Maryland case law has been found on this particular issue, we do find persuasive the reasoning of cases in other states where an employee's threat to commit acts of physical violence against a superior precluded the employee's entitlement to unemployment compensation. *See e.g.*, the cases cited in Annot., 20 A.L.R.4th 637 (1983); 76 Am.Jur.2d, *Unemployment Compensation* §§ 52, 53, 55, and 57 (1975, 1987 Cum.Supp.).

■ The appellee poses the curious argument that his behavior is not gross misconduct because such threatening words as those uttered by him are commonplace in the context of labor disputes. He maintains that his menacing words were "protected labor speech." Even if this argument were not foreclosed from appellate review due to appellee's failure to raise this theory at some point in the administrative process, we would reject it out of hand. Md. Rule 1085.

So too do we reject appellee's argument that his threat to kill his supervisor cannot establish gross misconduct because the employer's rules did not compel his discharge. Appellee asserts that he was discharged pursuant to Section H of Prince George's Hospital Center's policy and procedures manual. That section prohibits threatening, intimidation, and coercion of other employees. Appellee further

asserts that although a minimum penalty is prescribed for a violation of Section H, termination of employment is not listed as a penalty. He posits that because his employer's "rules" did not compel discharge based upon his threat to his supervisor, his conduct, when measured by the employer's expectations, does not meet the definition of gross misconduct.

■ We disagree for several reasons, not the least of which is that the particular penalty prescribed by an employer for a wayward employee's behavior is not what defines the statutory term "gross misconduct." Furthermore, the Hospital's policy and procedure manual states that "a termination action may be taken for a very serious first offense." Threatening to kill one's supervisor is patently a "serious offense."

## II.

■ We turn now to appellants' second contention that there was substantial evidence in the record to support the Board of Appeals' decision that appellee was disqualified from receiving benefits because he was terminated for gross misconduct after threatening to kill his supervisor. Appellants argue that the circuit court improperly substituted its judgment for that of the agency in contravention of well-settled principles of administrative law. We agree.

■ In reviewing the agency decision, which is deemed *prima facie* correct, the court must view it in the light most favorable to the agency. *Balto. Lutheran High School Assn., Inc. v. Employment Security Administration,* 302 Md. 649, 490 A.2d 701 (1985). The court must not substitute its judgment on the facts for that of the agency; rather it determines whether a reasoning mind could have reached the agency's conclusion. *See Painter v. Department of Employment and Training,* 68 Md.App. 356, 511 A.2d 585 (1986); *Hopkins Hospital v. Ins. Comm'r,* 302 Md. 411, 488 A.2d 942 (1985).

In the instant case, the record reveals that appellee vowed to kill his supervisor before the day ended. The testimony of appellee's co-workers, to whom the remark was addressed, indicated that they had known appellee for some time and did not think his threat idle. The evidence further shows that appellee, immediately following the threat, made an unusual request to go home. Evidence also shows that appellee owned "a whole lot of guns." We think a reasoning mind could have reached the same conclusion as was reached by the Board of Appeals. We thus reverse the circuit court's order and remand the case for affirmance of the Board's decision to disqualify appellee from receipt of unemployment insurance benefits because of gross misconduct connected with appellee's job.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR ENTRY OF JUDGMENT AFFIRMING THE AGENCY DETERMINATION; COSTS OF PREPARATION AND FILING OF TRANSCRIPT OF TESTIMONY, PRINTED RECORD EXTRACT AND APPELLANTS' BRIEF TO BE PAID BY APPELLANTS. APPELLEE TO PAY HIS BRIEFING COSTS.