761 A.2d 350

**JOHNS HOPKINS UNIVERSITY**

v.

**BOARD OF LABOR, LICENSING AND REGULATIONS.**

**No. 1862, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 2, 2000.

Clyde A. Bernett, Jr. (Frederick G. Savage and Gerard D. St. Ours, on the brief), Baltimore, for Appellant.

Matthew A. Lawrence, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Argued before MOYLAN, HOLLANDER and JOHN F. McAULIFFE, (retired, specially assigned), JJ.

JOHN F. McAULIFFE, Judge (Retired, Specially Assigned).

This unemployment insurance case addresses whether § 8–1003 of the Labor and Employment Article of the Maryland Code, which disqualifies claimants from unemployment benefits for misconduct, applies to conduct that is a product of a mental deficiency. Appellant, Johns Hopkins University ("JHU"), appeals a decision by the Board of Labor, Licensing and Regulation (the "Board") granting unemployment benefits to Anthony Costello, a former employee of JHU, without any disqualification for misconduct. Costello was fired from JHU after his bipolar disorder caused him to go to work with a hockey stick and behave in a violent and threatening manner. The Circuit Court for Baltimore City affirmed the Board's decision. On appeal, JHU raises a single issue:

In order to establish "misconduct" under the Maryland Unemployment Insurance Law § 8–1003, must the employer show that the claimant's conduct precipitating his termi-

nation was "voluntary" even though the law does not require a finding of intentionality?

For the following reasons, we reverse.

Costello began working for JHU on February 1, 1989, as a Senior Lab Technician II within the School of Medicine's Department of Pathology. On March 10, 1997, Costello arrived at work with a hockey stick. He struck various objects with the stick, including desks and file cabinets, and when Costello's supervisor attempted to get him to leave the lab, Costello threatened to "get rid of" him. JHU security personnel and the Baltimore City Police removed Costello from the lab and escorted him to the Emergency Room. He was involuntarily admitted to JHU's Affective Disorders Unit until a certification was executed by an Administrative Law Judge nine days later permitting him to leave the hospital.

On April 30, 1997, JHU terminated Costello's employment because of "this serious incident, as well as attendance and performance patterns about which [Costello was] counseled in the months prior to March 10." On May 30, 1997, Costello applied for unemployment benefits. A claims examiner found his conduct constituted "gross misconduct," as defined in § 8–1002 of the Labor and Employment Article and, therefore, disqualified him from benefits. Costello appealed the decision. After a hearing, the hearing examiner reversed the claims examiner's decision by finding there was "competent evidence indicat[ing] that [Costello's bipolar disorder] caused the claimant's actions on March 10, 1997. The claimant's actions cannot be characterized as intentional misconduct." JHU appealed to the Board and the Board affirmed the decision.

JHU then appealed to the Circuit Court for Baltimore City. That court remanded the case to the Board in light of the Court of Appeals' decision in *Department of Labor v. Hider,* 349 Md. 71, 706 A.2d 1073 (1998), which held that misconduct under § 8–1003 of the Labor and Employment Article does not require intentional misconduct. On remand, the Board found that *Hider* did not control in the instant case because "in *Hider,* the claimants['] actions ... did constitute miscon-

duct," whereas in this case, Costello "did not have the ability to commit misconduct" because of his medical condition and granted Costello unemployment benefits. JHU appealed the Board's decision to the Circuit Court for Baltimore City, where the decision was affirmed. The circuit court agreed with the Board that:

> *Hider* raises a different issue when it discusses the issue of whether misconduct is intentional, and what the court is trying to do in *Hider* is to distinguish the proof necessary for misconduct from gross misconduct and aggravated misconduct. And that the Board in this case was addressing whether Mr. Costello, the employee, had the capacity at the time to know what he was doing and therefore be responsible for it. That is a different issue than raised in *Hider*.

This appeal followed.

Judicial review of the Board's decision regarding unemployment benefits is governed by § 8–512(d) of the Maryland Code, Labor and Employment Article, which states:

> (d) *Scope of review.*—In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:
>
> (1) findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and
>
> (2) there is no fraud.

MD.CODE (1999), LAB. & EMPL. § 8–512(d). Thus, absent an allegation of fraud, the factual findings by the Board, if supported by substantial evidence, are conclusive. *Total Audio–Visual Systems, Inc. v. Department of Labor,* 360 Md. 387, 394, 758 A.2d 124 (2000); *Allen v. Core Target City Youth Program,* 275 Md. 69, 75, 338 A.2d 237 (1975). The test for determining whether there was substantial evidence to support the Board's factual findings is whether reasoning minds could reach the same conclusion from the facts relied upon by the Board. *Hider,* 349 Md. at 78, 706 A.2d 1073.

In *Hider,* two former nursing home employees applied for unemployment benefits after being terminated from employment for failing to respond to an emergency medical situation. *Id.* at 79, 706 A.2d 1073. The Board found that the claimants' poor judgment in failing to check on a patient who complained of heart pain amounted to misconduct and, as a result, disqualified them from benefits for ten weeks. *Id.* at 77, 706 A.2d 1073. On appeal, the circuit court affirmed the Board's decision. *Hider v. Department of Labor, Licensing & Regulation,* 115 Md.App. 258, 262–63, 693 A.2d 17 (1997). This Court held that the Board erred as a matter of law by concluding that the claimants' conduct amounted to misconduct because their actions were unintentional. *Id.* at 281, 693 A.2d 17. The Court of Appeals reversed and reinstated the Board's decision because "requir[ing] intentional misbehavior would blur, if not dissolve, the distinction between . . . misconduct . . . and gross misconduct. . . ." *Hider,* 349 Md. at 84, 706 A.2d 1073.

■ In this case, the events of March 10, 1997, are undisputed. In addition, JHU does not contest the Board's conclusion that Costello's actions on March 10, 1997, were caused by his bipolar disorder. Rather, JHU argues that the Board and circuit court erred as a matter of law by misconstruing § 8–1003 of the Labor and Employment Article to require a "voluntary" act. Therefore, the issue before us is one of statutory construction.

■ The cardinal rule of statutory construction is that statutes should be construed to effectuate the Legislature's intention. *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007 (1977); *Allen,* 275 Md. at 77, 338 A.2d 237 (quoting *Celanese Corp. of America v. Davis,* 186 Md. 463, 47 A.2d 379 (1946)). The intent of the Legislature must first be sought in the language of the statute itself. *Allen,* 275 Md. at 77, 338 A.2d 237. If the language is free of ambiguity and has a definite and sensible meaning, there is usually no need to look elsewhere to ascertain the Legislature's intention. *Dowling,* 281 Md. at 418, 379 A.2d 1007. Courts are not permitted to insert words to express an intention contrary to the plain

words of the statute and may not omit words or render them superfluous or meaningless. *Id.* at 419, 379 A.2d 1007.

■ Maryland's Unemployment Insurance Law is set forth in Title 8 of the Maryland Code, Labor and Employment Article. It is intended to prevent economic insecurity and to alleviate the consequences of involuntary unemployment and economic distress. *Allen*, 275 Md. at 75, 338 A.2d 237; MD. CODE (1999 Repl. Vol.), LAB. & EMPL. § 8–102. The policy statement enunciated in § 8–102(c) states that unemployment benefits are to be used "for the benefit of individuals unemployed through no fault of their own." MD.CODE (1999 Repl. Vol.), LAB. & EMPL. § 8–102(c).

Grounds to disqualify claimants from receiving benefits are set forth in Subtitle 10. The Legislature created three types of misconduct that disqualify a claimant from benefits: misconduct, gross misconduct, and aggravated misconduct. Misconduct is governed by § 8–1003 and states:

(a) *Grounds for disqualification.*—An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if the Secretary finds that unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is misconduct in connection with employment but that is not:

(1) aggravated misconduct, under § 8–1002.1 of this subtitle; or

(2) gross misconduct under § 8–1002 of this subtitle.

(b) *Duration of disqualification.*—A disqualification under this section shall:

(1) begin with the first week for which unemployment is caused by discharge or suspension for misconduct; and

(2) continue for a total of at least 5 but not more than 10 weeks, as determined by the Secretary, based on the seriousness of the misconduct.

MD.CODE (1999 Repl. Vol.), LAB. & EMPL. § 8–1003.

Because the term "misconduct" is undefined in this section, the Court of Appeals adopted a definition of "misconduct" in *Rogers v. Radio Shack*, 271 Md. 126, 132, 314 A.2d 113 (1974):

" 'The term, "misconduct," as used in the Statute, means a transgression of some established rule or policy of the employer, the commission of a forbidden act, a dereliction of duty, or a course of wrongful conduct committed by an employee, within the scope of his employment relationship, during hours of employment, or on the employer's premises.' "

*Hider*, 349 Md. at 85, 706 A.2d 1073.

Gross misconduct is governed by § 8–1002 and states:

(a) *"Gross misconduct" defined.* In this section "gross misconduct":

(1) means conduct of an employee that is:

(i) **deliberate and willful disregard** of standards of behavior that an employing unit rightfully expects and that shows gross indifference to the interests of the employing unit; or

(ii) repeated violations of employment rules that prove a regular and wanton disregard of the employee's obligations; and

(2) does not include:

(i) aggravated misconduct, as defined under § 8–1002.1 of this subtitle; or

(ii) other misconduct, as defined under § 8–1003 of this subtitle.

MD.CODE (1999 Repl. Vol.), LAB. & EMPL. § 8–1002(a)(emphasis added).

Aggravated misconduct is governed by § 8–1002.1 and states:

(a) *"Aggravated misconduct" defined.*—(1) In this section, "aggravated misconduct" means behavior committed with **actual malice and deliberate disregard** for the property, safety, or life of others that:

(i) affects the employer, fellow employees, subcontractors, invitees of the employer, members of the public, or the ultimate consumer of the employer's product or services; and

(ii) consists of either physical assault or property loss or damage so serious that the penalties of misconduct or gross misconduct are not sufficient.

(2) In this section, "aggravated misconduct" does not include:

(i) gross misconduct, as defined under § 8–1002 of this subtitle; or

(ii) misconduct, as defined under § 8–1003 of this subtitle.

MD.CODE (1999 Repl. Vol.), LAB. & EMPL. § 8–1002.1(a)(emphasis added).

In *Hider,* the Court of Appeals described the misconduct provisions as follows:

... [T]he legislature created a graduated, three-tiered system of disqualifications from benefits based on employee misconduct. The severity of the disqualification increases in proportion to the seriousness of the misconduct. A finding of misconduct pursuant to § 8–1003 results in a claimant's being disqualified from receiving unemployment benefits for a period of five to ten weeks. The term, "misconduct," as it is used in § 8–1003, is undefined in that section. *See Allen v. Core Target City Youth Program,* 275 Md. 69, 86, 338 A.2d 237, 247 (1975). Section 8–1002 provides that a claimant who is discharged as a result of "gross misconduct" is disqualified from receiving unemployment benefits until the claimant is reemployed and has earned wages equal to at least twenty times the claimant's weekly unemployment benefit amount. Only misconduct that is "deliberate and willful" or misconduct that is "wanton" can qualify as "gross misconduct." A finding of "aggravated misconduct" under § 8–1002.1 causes a claimant to be disqualified from receiving unemployment benefits until the claimant is reemployed and has earned wages equal to at least thirty times the claimant's weekly unemployment benefit amount. "Actual malice" is required for a finding of "aggravated conduct."

*Hider,* 349 Md. at 82–84, 706 A.2d 1073 (emphasis added) (footnotes omitted).

We agree with JHU that Costello should have been subject to a limited disqualification from benefits for misconduct pursuant to § 8–1003. In *Hider*, the Court of Appeals said:

[T]he Court of Special Appeals erred in construing the misconduct provision of Section 8–1003 to require intentional misbehavior.

349 Md. at 84, 706 A.2d 1073.

It is important to keep in mind that this is a civil and not a criminal case. In criminal jurisprudence valid distinctions are drawn between mental capacity to form general and specific intents, *Hoey v. State*, 311 Md. 473, 494, 536 A.2d 622 (1988), and defendants may avoid the imposition of criminal sanctions by showing that as a result of a mental disorder or mental retardation they lacked substantial capacity to appreciate the criminality of their conduct or to conform that conduct to the requirements of law. MD.CODE (2000 Repl.Vol.), Health–General, § 12–108.

In civil cases, however, the actor is generally held accountable for his or her conduct, even though that conduct is a product of a mental deficiency.

Unless the actor is a child, his insanity or other mental deficiency does not relieve the actor from liability for conduct which does not conform to the standard of a reasonable man under like circumstances.

*Restatement (Second) Torts*, § 283B (1965). In *Hudnall v. Sellner*, 800 F.2d 377, 384 (4th Cir.1986), the Court said:

We therefore hold that under Maryland law any mental deficiency suffered by Sellner at the time of the conduct for which the jury imposed tort liability would not relieve him of that liability.

*See also Cross v. Kent*, 32 Md. 581, 583 (1870).

■ Appellee concedes that Mr. Costello's behavior "was inappropriate and a legitimate basis for his discharge." The Court of Appeals has made it clear that a showing of intentional conduct is not required under § 8–1003, and the Legislature has not carved out any exception for misconduct caused by a

mental deficiency. Accordingly, the Board must apply § 8–1003 and impose a disqualification of benefits for not less than five nor more than ten weeks.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE DEPARTMENT OF LABOR, LICENSING AND REGULATION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**