883 A.2d 953

**DEPARTMENT OF LABOR, Licensing and Regulation**

v.

**Henry S. BOARDLEY.**

**No. 1463, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Sept. 20, 2005.

Gaston J. Sigur, III (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellant.

Panel SALMON, MEREDITH, CHARLES E. MOYLAN, JR., (Ret., Specially Assigned), JJ.

MEREDITH, J.

Henry S. Boardley, appellee, applied for unemployment benefits after he was fired by his employer, Dimensions Health Corporation ("Dimensions"), for threatening a supervisor. When Dimensions contested Boardley's request for benefits, the Department of Labor, Licensing and Regulation ("DLLR"), appellant, held a hearing. The hearing examiner found that Boardley had been terminated for "gross misconduct," as defined in Md.Code (1991, 1999 Rep. Vol.), Labor and Employment Article ("L.E."), § 8–1002, and denied Boardley's request for unemployment benefits. The DLLR Board of Appeals affirmed the hearing examiner's findings of fact and the decision to deny Boardley benefits.

Boardley petitioned the Circuit Court for Prince George's County for judicial review. The circuit court reversed the DLLR's decision to deny Boardley unemployment benefits and remanded the case to the agency for further proceedings. DLLR noted a timely appeal and presents the following issue for our review:

> Did the circuit court err in remanding the case where it made its own findings of fact and failed to determine whether substantial evidence existed to support the Board's decision that the Claimant's termination of employment was for gross misconduct?

For the reasons set forth below, we shall reverse the judgment of the circuit court and remand the case to the circuit court with directions to affirm the administrative decision.

## BACKGROUND

The record reflects that Boardley filed a claim for unemployment benefits after his employment was terminated by Dimensions on March 21, 2003. A claims specialist for the DLLR Office of Unemployment Insurance initially concluded that "insufficient information has been presented to show that the claimant's actions constituted misconduct in connection with the work. As a result, it is determined that the circumstances surrounding the separation do not warrant a disqualification under Section 8–1002 or 8–1003 of the Maryland Unemployment Insurance Law." Dimensions appealed the allowance of benefits.[1]

DLLR sent Boardley and Dimensions notices indicating the time and place of the appeal hearing, and informing the parties that "[t]his hearing is the last step at which either the claimant or the employer has the absolute right to present evidence." The notice also advised the parties: "If a[p]ostponement of the hearing is needed, the request must be received in writing at the Appeals Division at least three

---

1. As the Court of Appeals explained in *Department of Labor, Licensing and Regulation v. Hider*, 349 Md. 71, 82, 706 A.2d 1073 (1998), "In enacting the unemployment compensation program, the legislature created a graduated, three-tiered system of disqualifications from benefits based on employee misconduct. The severity of the disqualification increases in proportion to the seriousness of the misconduct." Mere "misconduct" can result in a five to ten week disqualification from receiving unemployment benefits pursuant to L.E. § 8–1003. Under L.E. § 8–1002, a finding that the termination was for "gross misconduct" will result in the employee being disqualified from receiving benefits until the employee has been reemployed and earned at least twenty times the weekly unemployment benefit amount. And under L.E. § 8–1002.1, a finding that there was "aggravated misconduct" will result in a disqualification until the employee has been reemployed and earned compensation equal to at least thirty times the weekly unemployment benefit amount.

working days before the date of the hearing. A postponement will be granted if it is determined there is good cause."

The appeal was heard by a hearing examiner on July 2, 2003. Because Boardley failed to appear at the hearing, and he had not requested a postponement in writing, the hearing examiner conducted the hearing in Boardley's absence.

On July 15, 2003, the hearing examiner issued an "Unemployment Insurance Appeals Decision," in which the hearing examiner concluded: "[T]he claimant was discharged for gross misconduct connected with the work within the meaning of [L.E. § ] 8–1002(a)(1)(i)." [2]

The hearing examiner made the following findings of fact: On the claimant's last day of work for the employer of record, the claimant was upset regarding direction given to him by a supervisor, Robert Dillon. The claimant exited Mr. Dillon's office and approached another supervisor, Mr. Edward O'Reilly. The claimant then got within inches of

---

2. Boardley's disqualification was based upon finding of gross misconduct, under § 8–1002, which provides:

(a) In this section "gross misconduct": (1) means conduct of an employee that is:

(i) deliberate and willful disregard of standards of behavior that an employing unit rightfully expects and that shows gross indifference to the interests of the employing unit; or

(ii) repeated violations of employment rules that prove a regular and wanton disregard of the employee's obligations; and

(2) does not include:

(i) aggravated misconduct, as defined under § 8–1002.1 of this subtitle; or

(ii) other misconduct, as defined under § 8–1003 of this subtitle.

(b) An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is gross misconduct in connection with employment.

(c) A disqualification under this section shall:

(1) begin with the first week for which unemployment is caused by discharge or suspension for gross misconduct as determined under this section; and

(2) continue until the individual is reemployed and has earned wages in covered employment that equal at least 20 times the weekly benefit amount of the individual.

Mr. O'Reilly and began yelling at him. The claimant's statements to Mr. O'Reilly included the following: "You're the cause of this, you fucker!"; "I'm not finished with you, you fucker!"; "I'll get you, you fucker!"; "I haven't even started to fuck with you yet."

Based upon this incident, for which the claimant did not have a legitimate cause for being so angry with Mr. O'Reilly, the claimant was discharged (Employer Exhibit No. 4). The claimant's behavior violated company policy (Employer Exhibit No. 3). In addition, the claimant had been warned regarding such behavior in the past (Employer Exhibit No. 1).

The hearing examiner noted that "the claimant failed to appear for this hearing and, therefore, presented no evidence to contradict the credible evidence presented by the employer."

Pursuant to L.E. § 8–510, Boardley appealed the hearing examiner's decision to the DLLR Board of Appeals. In his appeal notice dated July 21, 2003, Boardley stated, "I[,] Henry S. Boardley[,] wish to appeal the decision regarding my unemployment compensation." Additionally, Boardley attached to his appeal notice various commendations for past good service, as well as a letter to the Board that stated:

This is addition[al] evidence:

Mr. O'Reilly was not my supervisor he just wanted to keep the harassment up. Mr. Robert Dillon he had only been with the company two weeks if Mr. O'Reilly used Dillon which Mr. Dillon admitted to me, to keep the harassment up [to] try to make me look bad. My Supervisor at the time was Mr. Louis Proctor he can be reached at ... also [m]y union rep Mr. Geo Smith can also tell you how I've been pick[ed] on by Mr. O'Reilly an how many meetings we had with me and Mr. Woody Brower the Director of Maintenance. Mr. Geo Smith can be reached at ... and Mis. Franice McRae will tell you about Mr. O[']Reilly also."

With respect to the events that gave rise to the termination, Boardley also attached a statement summarizing his recollection as to what occurred. He stated, in part:

On that March 21, 2003 day, Ed and I exchanged words loudly (in the maint. shop) because he had walked up on me and stood very close to me verbally harassing me about "what are you going to do now. Threaten me". I did respond that I would fix him (with legal actions) because I have been seeking counciling [sic] thru my attorney about the type of treatment that I've been suffering at my employment, I did not make any physical threatening remarks to anyone.

Mr. O'Reilly has also threatened to get my co-worker (Tyrone Wolridge) and an engineer in the power plant and he has mentioned this to some of the guys in the shop as well. But as he told me on that day (03–31–03) as we exchanged words, "I'm the boss; I'm corporate now". During the dicillinary [sic] hearing, Mr. Barksdoll stated that two employees were witnesses and had made claim of my having said words of threat but attached is a copy of the statement made by one of those employees. I believe the relationship between O'Reilly and Barksdoll helped to precipitate this disciplinary action against me.

The written statement Boardley referred to as being attached was from witness Mike Hall, and said:

I was sitting at my desk at lunch. The door to Bob Dillion's (sic) office was closed. The door opened, Henry Boardley came out stopped and turned back towards the door and started yelling. Henry then turned away and took a few steps, stopped, and came back yelling some more. I turned up my radio. It was then I saw Eddie O'Reilly standing next to Henry and I thought Eddie was ready to restrain Henry if Henry charged Bob Dillion (sic). I do not know what words were being said as it was not any of my business and I was listening to the radio.

Boardley filed nothing with the Board of Appeals that mentioned any reason for missing the hearing conducted by

the hearing examiner. Nor did he mention in the documents he filed with the Board of Appeals that he had made an oral request for a postponement of the hearing examiner's hearing, or that he had attempted to attend the hearing by calling in on the telephone. The additional information Boardley presented to the Board of Appeals did not undermine the key findings of fact made by the hearing examiner regarding Boardley threatening a supervisor. In essence, Boardley admitted that he had had a loud confrontation with one of Dimensions's supervisory employees, even though, in Boardley's view, he was justified in acting as he did because he was provoked or set up.

The Board of Appeals elected not to hold another hearing, but instead, considered the appeal on the record and issued the final ruling in this matter:

> Upon review of the record in this case, the Board of Appeals adopts the findings of fact and conclusions of law of the Hearing Examiner.

On October 7, 2003, Boardley filed a petition for judicial review in the circuit court. In his petition, Boardley stated, "The Petitioner was not party to the agency proceeding. Case was made on [untruths]; I was not at [the] hearings; I am providing documents 13 pages for reviewing." Boardley attached the same documents he had submitted to the Board of Appeals with his notice of appeal.

On October 29, 2003, DLLR indicated that it would participate in the judicial review proceeding. On January 7, 2004, Boardley filed a document that presumably served as his supporting memorandum required by Maryland Rule 7–207. It stated:

> I think Agency's decision wrong[:]
>
> 1.) I was never at any of hearings to speak[.]
>
> 2.) Some of people at hearing's I have never seen or heard of[.]
>
> 3.) Main reason is their were lot of untrue things told[.][I]f hearing examiner would ha[ve] read my testimony and

check with *union reps* [,] they would know how long Mr. O'Reilly had been harassing me over a 18 month time. [Emphasis in original.]

In response, DLLR filed a memorandum urging the court to affirm the agency's decision.

At the circuit court hearing on July 9, 2004, because the circuit court had misdirected the hearing notice, no one appeared on behalf of the agency. The hearing judge asked Boardley, "Why didn't you appear at the hearing [before the hearing examiner]?" In response, Boardley stated, "I have kidney disease now and [edema]. I was in the hospital, the VA hospital." Boardley elaborated:

I called down to the Department of Labor. The lady said, there was some ward office where they had the hearing. She said well they were having the hearing and there was no way I could get in touch with the hearing examiner. And they told that she couldn't get in touch with the hearing examiner. And I asked her why. She said because they are in this little room and there is no telephone.

The circuit court judge responded to Boardley:

Well, the best I'm going to be able to do for you, sir, and since the Attorney General hasn't shown up, I don't have any problem with it. I can remand the action back to the agency for—to the Department of Labor, Licensing and Regulation. I can remand it back there for [a] hearing seeing that you were not present at the hearing and the Attorney General isn't present here today. And that's the best I can do for you.

The court then directed the clerk:

Do a docket entry that the action is remanded back to the Department of Labor, Licensing and Regulation for further proceedings. And just to do a little memo that because the defendant was hospitalized at the time of the hearing, was unable to reach the hearing—called the hearing examiner but was not able to reach hearing examiner directly, and because the Attorney General was not here today at this hearing, that it would be appropriate to remand it [for]

further proceedings in which the Petitioner, Mr. Boardley, can participate.

The circuit court entered an order dated July 7, 2004, that stated:

This Court made a finding of fact that Appellant Henry S. Boardley was in the hospital on July 2, 2003, and that he made a good faith effort to convey this information to the Hearing Examiner by telephone, but was not able to reach the Hearing Examiner.

Therefore, because the Appellant was in the hospital on July 2, 2003, and made a good faith but unsuccessful attempt to contact the Hearing Examiner, and because the Attorney General failed to appear for this July 9, 2004[,] hearing, it is hereby

**ORDERED,** this 9th of July 2004, by the Circuit Court for Prince George's County, that this case is remanded back to Department of Labor, Licensing & Regulations Board of Appeals for further proceedings in which Appellant Boardley can participate.

## DISCUSSION

DLLR asks this Court to reverse the circuit court's decision because the "circuit court's remand was improper where it made its own finding of fact on an issue that was not properly before it and without first deciding whether or not the Board's decision regarding [Boardley's] termination for gross misconduct was supported by substantial evidence." We agree the circuit court was in error to order a remand for further proceedings. The circuit court found reversible error in the hearing examiner's failure to grant Boardley either a postponement or the right to attend via telephone, even though no such request appears in the record. The circuit court concluded, in essence, that the Board of Appeals committed reversible error in failing to find that Boardley's hospitalization entitled him to a new hearing even though Boardley never advised the Board of Appeals of the reason he did not appear before the hearing examiner. In basing its decision to remand the case

on excuses never properly raised before the agency, the circuit court erred.

 It is the function of the reviewing court to review only the materials that were in the record before the agency at the time it made its final decision. *Chertkof v. Dep't. of Nat. Resources,* 43 Md.App. 10, 17, 402 A.2d 1315 (1979). As Chief Judge Bell stated in *Dept. of Health v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051 (2001):

> [I]t is the final decision of the final decision maker at the administrative level, not that of the reviewing court, that is subject to judicial review. Accordingly, the reviewing court, restricted to the record made before the administrative agency, *see Cicala v. Disability Review Bd. for Prince George's County,* 288 Md. 254, 260, 418 A.2d 205, 209 (1980), may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency. Stated differently, an appellate court will review an adjudicatory agency decision solely on the grounds relied upon by the agency.

*Accord Schwartz v. Maryland Department of Natural Resources,* 385 Md. 534, 553–55, 870 A.2d 168 (2005) ("a reviewing court ordinarily ' "may not pass upon issues presented to it for the first time on judicial review...." ' "); *Brodie v. Motor Vehicle Administration,* 367 Md. 1, 3–4, 785 A.2d 747 (2001) ("Since Brodie's entire challenge to the administrative decision was based on an issue not raised before the agency, the circuit court should have affirmed the administrative decision without reaching the issue.")

In support of his petition for judicial review, Boardley suggested that DLLR's decision should be reversed because he did not take part in the hearing before the hearing examiner. There is nothing in the record from the agency to show that Boardley raised this issue with the Board of Appeals. The record clearly reflects that, when Boardley appealed to the Board of Appeals, he made no mention of any facts that might have persuaded the Board of Appeals that he had good cause for missing the hearing before the hearing examiner.

He failed to bring to the attention of the Board of Appeals his contentions about being hospitalized and making an unsuccessful effort to attend by telephone. As a result, the Board of Appeals did not have any opportunity to consider this issue prior to the time it adopted the hearing examiner's decision as the final decision of the agency.

Consequently, when the case was being reviewed by the circuit court, the reviewing judge was precluded from considering this new issue in the course of the circuit court's review of the Board of Appeals decision. The circuit court, however, not only considered this issue, but based its decision to remand the case for further proceedings on the fact that Boardley had not participated in the hearing conducted by the hearing examiner.

■ As this Court noted in *Dept. of Labor, Licensing and Regulation v. Woodie,* 128 Md.App. 398, 409–10, 738 A.2d 334 (1999), the Administrative Procedure Act does not apply to unemployment insurance proceedings, Md.Code, State Government Article, § 10–203(a)(5). Judicial review in such cases is governed by L.E. § 8–512(d), which contains no express authority to remand a case. Section 8–512(d) provides:

*Scope of review.*—In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:

(1) findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and

(2) there is no fraud.

With respect to § 8–512(d), the Court of Appeals said in *Department of Labor, Licensing and Regulation v. Hider,* 349 Md. 71, 77–78, 706 A.2d 1073 (1998):

Under this statute, the reviewing court shall determine only: "(1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." *Baltimore Lutheran High Sch. Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490

A.2d 701, 708 (1985). The reviewing court may not reject a decision of the Board supported by substantial evidence unless that decision is wrong as a matter of law. *See Department of Econ. & Employment Dev. v. Propper,* 108 Md.App. 595, 604, 673 A.2d 713, 717 (1996). The test for determining whether the Board's findings of fact are supported by substantial evidence is whether reasoning minds could reach the same conclusion from the facts relied upon by the Board. *See Baltimore Lutheran,* 302 Md. at 661–62, 490 A.2d at 708.

In *Employment Security Board of Maryland v. LeCates,* 218 Md. 202, 207, 145 A.2d 840 (1958), another case involving judicial review of an unemployment insurance claim, the Court of Appeals described the limited scope of review as follows:

> In unemployment compensation cases we have consistently held, as the law requires, that the findings of the Board as to the facts are conclusive, if there is evidence to support such findings. The court's jurisdiction, in such cases, is specifically limited to questions of law. [Citations omitted.] In stating the material facts, the court should state as facts such evidence as is most favorable to the findings of the Board. [Citations omitted.] Moreover, in reviewing the facts, a court is confined to determining whether there is evidence to support the findings of the Board, and in the absence of fraud, that finding, as stated above, is conclusive.

*Accord Watkins v. Employment Security Administration,* 266 Md. 223, 224–25, 292 A.2d 653 (1972).

In *Woodie,* 128 Md.App. at 406–07, 738 A.2d 334, after noting the need for a streamlined process to handle the large number of unemployment insurance disputes, this Court observed that "unemployment insurance law is silent on the issue of remands." In *Woodie,* the circuit court had made no analysis of whether the record contained substantial evidence to support the decision of the agency "before deciding to remand for what it termed a 'supplemental hearing.'" *Id.* at 407, 738 A.2d 334. Consequently, we concluded that the circuit court overstepped its limited jurisdiction by ordering a

remand when "the only end served by a remand [wa]s to allow the appellee a second opportunity to present evidence." *Id.* at 408, 738 A.2d 334.

Similarly, in *Department of Economic and Employment Development v. Hager,* 96 Md.App. 362, 374, 625 A.2d 342 (1993), we concluded that the circuit court should not have remanded the case "for 'additional fact-finding' " where there were "ample facts in the record to support the Board's finding that there was 'gross misconduct.' " Under such circumstances, "additional fact-finding is unnecessary." *Id.*

The Court of Appeals recently emphasized the limited scope of judicial review of administrative agencies decisions in *Maryland Aviation Administration v. Noland,* 386 Md. 556, 873 A.2d 1145 (2005). In *Noland,* the Secretary of the Department of Budget and Management, as the final decision maker for the subject agency, ordered the termination of a State employee who had punched a disorderly psychiatric prisoner. When the employee filed a petition for judicial review, the circuit court concluded that the sanction imposed by the agency was arbitrary. The circuit court reversed the administrative decision and remanded the case for further administrative consideration. The Court of Appeals disapprovingly observed:

> The reversal was not based upon a judicial holding that any of the administrative findings of fact were unsupported by substantial evidence. Furthermore, the Circuit Court did not hold, as a matter of law, that Noland was not guilty of any misconduct. (Such a legal holding, in light of the administrative record and the applicable regulations, would not be sustainable). Rather, the Circuit Court's decision was largely based upon the Court's view that, in determining the appropriate sanction, the Secretary's designee gave insufficient consideration to what the court believed were substantial mitigating factors.
>
> \* \* \*
>
> ... While acknowledging that the Secretary's designee purported to have considered all of the factors set forth in

*Maryland State Retirement Agency v. Delambo,* [109 Md. App. 683, 691–92, 675 A.2d 1018 (1996),] the Circuit Court obviously disagreed with the weight which the designee had given to such factors.

*Id.* at 567–68, 873 A.2d 1145. In an unreported opinion, this Court had affirmed the order remanding the case, pointing out that the Secretary's ruling did not adequately explain whether appropriate and adequate consideration was given to the *Delambo* factors. *Id.* at 568–69, 873 A.2d 1145.

The Court of Appeals reversed and, holding that a remand was not appropriate, ordered this Court to direct the circuit court to affirm the administrative decision. Explaining the basis for its conclusion that the reviewing courts had over-stepped their proper bounds, the Court of Appeals noted in *Noland* that one fundamental reason for the narrow scope of judicial review in Maryland is our constitutional separation of powers mandate. The Court of Appeals emphasized that a reviewing court may not substitute its judgment for a discretionary ruling made by the agency:

Obviously a court may not substitute its exercise of discretion for that exercised by the Executive Branch agency or official.

More importantly, however, when an agency or official in the Executive Branch of Government exercises "judgment," the agency or official is ordinarily performing a task which the Maryland Constitution or statutes have assigned to the Executive Branch and not to the Judicial Branch. The phrase that a court "substitutes its judgment" for the judgment of the Executive Branch suggests that the court is engaging in precisely the same type of determination, and is performing a function, which has been assigned to the Executive. Nevertheless, for the court to perform the same function as the Executive Branch would not be consonant with the express separation of powers mandate set forth in Article 8 of the Maryland Declaration of Rights. *See Sadler v. Dimensions,* 378 Md. 509, 530, 836 A.2d 655, 667–668 (2003), where Judge Raker for the Court recently empha-sized that "judicial review of the actions of an administrative

agency is restricted primarily because of the fundamental doctrine of separation of powers as set forth in Article 8 of the Declaration of Rights of the Maryland Constitution." *See also, e.g., Bell Atlantic v. Intercom,* 366 Md. 1, 21–22, 782 A.2d 791, 803 (2001); *Dep't of Nat. Res. v. Linchester Sand & Gravel Corp.,* 274 Md. 211, 220–221, 334 A.2d 514, 521–522 (1975).

*Id.* at 574 n. 3, 873 A.2d 1145.

■■■ In the case cited by the Court of Appeals at the end of the language quoted above, *i.e., Dep't of Nat. Res. v. Linchester Sand & Gravel Corp.,* 274 Md. 211, 225, 334 A.2d 514 (1975), the Court stated "[T]he judiciary is constitutionally 'without authority to interfere . . . with the lawful exercise of administrative authority or discretion.'" (Quoting *Heaps v. Cobb,* 185 Md. 372, 379, 45 A.2d 73 (1945).) Consequently, even when statutes and rules authorize a reviewing court to remand an administrative decision to the agency under appropriate circumstances, *see, e.g.,* Md. Rule 7–209, the court must not exercise that authority in a manner that effectively substitutes the court's discretion for that of the agency. As the Court stated in the *Linchester* case, 274 Md. at 226, 334 A.2d 514, "[I]n regard to administrative agencies, which, while often functioning as fact-finding bodies, perform essentially nonjudicial duties, a Maryland court's 'inquiry is (almost always) limited to finding whether there was illegality or unreasonableness in the . . . action—when that inquiry is finished, judicial scrutiny ends. . . .' *Balto. Gas Co. v. McQuaid,* 220 Md. 373, 382, 152 A.2d 825, 830 (1959)." *Accord Juiliano v. Lion's Manor Nursing Home,* 62 Md.App. 145, 156, 488 A.2d 538 (1985)("If the record supports the agency findings, the only determination remaining is whether the agency correctly applied the law.").

■■ On the other hand, if the circuit court's review in this case had been frustrated because the agency's decision either was not sufficiently clear to allow for review, or failed to reflect findings or reasons, or was based on an erroneous conclusion of law, then a remand might have been appropriate.

The circuit court's decision to remand this case, however, does not reflect any such rationale.

 In an appeal from the circuit court's ruling upon a petition for judicial review of an administrative decision, we look through the circuit court's decision and review the decision of the agency. *Dept. of Health v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051 (2001) ("it is the final decision of the final decision maker at the administrative level, not that of the reviewing court, that is subject to judicial review"). The standard of review was recently summarized by the Court of Appeals in *Noland, supra,* 386 Md. at 571–72, 873 A.2d 1145, where the Court quoted at length from *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–69, 729 A.2d 376 (1999) (footnotes omitted), as follows:

A court's role in reviewing an administrative agency adjudicatory decision is narrow, *United Parcel v. People's Counsel,* 336 Md. 569, 576, 650 A.2d 226, 230 (1994); it "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel,* 336 Md. at 577, 650 A.2d at 230. *See also* Code (1984, 1995 Repl.Vol.), § 10–222(h) of the State Government Article; *District Council v. Brandywine Enterprises, Inc.,* 350 Md. 339, 349, 711 A.2d 1346, 1350–1351 (1998); *Catonsville Nursing v. Loveman,* 349 Md. 560, 568–569, 709 A.2d 749, 753 (1998).

In applying the substantial evidence test, a reviewing court decides " ' "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." ' " *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978). *See Anderson v. Dep't of Public Safety,* 330 Md. 187, 213, 623 A.2d 198, 210 (1993). A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. *CBS v. Comptroller,* 319 Md. 687, 698, 575 A.2d 324, 329 (1990). A reviewing court " 'must review the agency's

decision in the light most favorable to it; ... the agency's decision is *prima facie* correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence' and to draw inferences from that evidence." *CBS v. Comptroller, supra,* 319 Md. at 698, 575 A.2d at 329, quoting *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834–835, 490 A.2d 1296, 1301 (1985). *See Catonsville Nursing v. Loveman, supra,* 349 Md. at 569, 709 A.2d at 753 (final agency decisions "are *prima facie* correct and carry with them the presumption of validity").

Despite some unfortunate language that has crept into a few of our opinions, a "court's task on review is *not* to ' " 'substitute its judgment for the expertise of those persons who constitute the administrative agency,' " ' " *United Parcel v. People's Counsel, supra,* 336 Md. at 576–577, 650 A.2d at 230, quoting *Bulluck v. Pelham Wood Apts., supra,* 283 Md. at 513, 390 A.2d at 1124. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Lussier v. Md. Racing Commission,* 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996), and cases there cited; *McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ("The interpretation of a statute by those officials charged with administering the statute is ... entitled to weight")....

▮ Considering the evidence presented to the agency in Boardley's case, in a light most favorable to the prevailing party, there clearly was substantial evidence to support the decision of the agency. The evidence before the agency included the sworn testimony of two witnesses who attended the hearing, one of whom was the target of Boardley's belligerent threats, and the other an eye-witness to the verbal assault. There was also evidence that the employer had a written policy that prohibited threatening or intimidating another employee. There was further evidence that this was not Boardley's first infraction, and that he had previously received

a written disciplinary warning for a similar incident. Such evidence was sufficient to support DLLR's finding of gross misconduct within the meaning of L.E. § 8–1002.

Boardley's conduct bears many similarities to the acts of the employee who was disqualified from receiving unemployment benefits because of gross misconduct in *Department of Economic and Employment Development v. Owens,* 75 Md.App. 472, 541 A.2d 1324 (1988). Owens had been employed as a mechanic at the Prince George's Hospital Center. Prior to his termination, he had not been getting along with his supervisor. Owens "felt 'picked on' by [his supervisor] and had filed grievances to that effect." *Id.* at 474, 541 A.2d 1324. After one particularly "spirited discussion" about one of Owens's grievances, Owens pointed his finger and said, with reference to his supervisor, "Mark my words, I'm going to kill that motherfucker by the end of the day." He was fired for making that threat, and was denied unemployment benefits because his termination was for that act of gross misconduct.

When Owens petitioned for judicial review, the circuit court reversed the agency's denial of benefits. On appeal to this Court, we reversed the circuit court and ordered that the agency's denial of benefits be affirmed. We noted that "there is no hard and fast rule to determine what constitutes 'deliberate and willful' misconduct," *id.* at 477, 541 A.2d 1324, but we had little difficulty holding that Owens's threats qualified as gross misconduct. We stated:

> Certainly, threats of bodily harm to one's superior is behavior that qualifies as willful misconduct. Such behavior evidences a disregard of the standards of behavior that an employer has a right to expect of an employee as well as being disruptive of the orderly operation of the workplace.

*Id.* Although Boardley's threats to his supervisor might not have been quite as explicit as the one made by Owens, Boardley's behavior was nevertheless extremely disruptive conduct that "evidences a disregard of the standards of behavior an employer has a right to expect of an employee." *Id.*

Other cases in which the courts have concluded that an employee's conduct amounted to gross misconduct under § 8–1002 and its predecessors include: *Watkins, supra,* 266 Md. At 227–28 (chronic absenteeism supported disqualification of benefits for gross misconduct); *LeCates, supra,* 218 Md. at 209–10, 145 A.2d 840 (employee's conduct was deliberate and willful and in utter disregard of duties to employer where employee drove a truck without authorization, had an accident, and failed to report the accident); *Department of Labor, Licensing and Regulation v. Muddiman,* 120 Md.App. 725, 736–37, 708 A.2d 47 (1998) (employee who repeatedly failed to comply with employer's policy regarding handling of cash receipts was disqualified for gross misconduct pursuant to § 8–1002(a)(1)(ii)); *Department of Economic and Employment Development v. Propper,* 108 Md.App. 595, 609, 673 A.2d 713 (1996) (employee who failed to adhere to regular 9:00 a.m. to 5:00 p.m. work schedule held disqualified for gross misconduct); *Hager, supra,* 96 Md.App. at 372, 625 A.2d 342 (employee's flat refusal to be reassigned from day shift to night shift was gross misconduct); *Department of Economic and Employment Development v. Jones,* 79 Md.App. 531, 558 A.2d 739 (1989) (employee's persistent absenteeism and drug use constituted gross misconduct that disqualified employee from receiving unemployment compensation); *Painter v. Department of Employment and Training,* 68 Md.App. 356, 511 A.2d 585 (1986) (failure to return from sick leave for three months after doctor's release constituted gross misconduct). *See also Johns Hopkins University v. Board of Labor, Licensing and Regulations,* 134 Md.App. 653, 761 A.2d 350 (2000) (employee whose inappropriate violent behavior was beyond his control because of bipolar disorder nevertheless disqualified under § 8–1003 for unintentional misconduct); *Hernandez v. Department of Labor, Licensing and Regulation,* 122 Md.App. 19, 26–28, 711 A.2d 243 (1998) (inexperienced bank employee's failure to act with "due diligence" would support disqualification for misconduct under § 8–1003, but would not constitute gross misconduct under § 8–1002).

As this Court pointed out in *Johns Hopkins University v. Board of Labor, Licensing and Regulations, supra,* 134 Md. App. at 659, 761 A.2d 350, the General Assembly included an express statement of legislative policy with respect to unemployment insurance in L.E. § 8-102(c). The policy is that "the public good and the general welfare of the citizens of the State require the enactment of this title [L.E., Title 8] ... for the compulsory setting aside of unemployment reserves to be used *for the benefit of individuals unemployed through no fault of their own.*" (Emphasis added.)

The three tiers of disqualification provided for in §§ 8-1002, 8-1002.1, and 8-1003 are intended to deny benefits, for varying periods of time, to those individuals who become unemployed as a consequence of their own misconduct. The misconduct of Boardley was characterized by deliberate and willful disregard for his employer and for the good order of his place of employment. The evidence regarding Boardley's misconduct was sufficient to support the conclusion of the DLLR Board of Appeals that Boardley became unemployed as a result of his own gross misconduct in the workplace.

The circuit court erred in failing to affirm the decision of the DLLR Board of Appeals. We shall vacate the judgment of the circuit court and remand the case to the circuit court for entry of a judgment affirming the administrative decision.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH DIRECTIONS TO AFFIRM THE ADMINISTRATIVE DECISION.**

**COSTS TO BE PAID BY DEPARTMENT OF LABOR, LICENSING AND REGULATION.**